497 So.2d 976 (1986)
Martin BROOKS, As Guardian Ad Litem of the Estate of Vito Sturiano, Deceased, Appellant,
v.
Josephine STURIANO, Appellee.
No. 85-2177.
District Court of Appeal of Florida, Fourth District.
November 19, 1986.
*977 Nancy Little Hoffmann of Nancy Little Hoffmann, P.A., and Steven Billing of Billing, Cochran & Heath, P.A., Fort Lauderdale, for appellant.
Leonard Robbins & Linda Raspolich Pratt of Abrams, Anton, Robbins, Resnick, Schneider & Mager, P.A., Hollywood, for appellee.
STONE, Judge.
There are two issues raised by this appeal. The first is whether the wife's claim is barred by the doctrine of interspousal immunity. The trial judge concluded it was not, and entered final judgment against the guardian ad litem appointed for the decedent husband's estate.[1] We affirm as to this. The second is whether there is liability coverage under the terms of the insurance policy issued in New York. The policy lacks a clause, required by New York law in order to include coverage, insuring one spouse against the negligence of the other. This requires that we reverse, as New York law is applicable.
As to the first issue, the facts of this case are uniquely different from those found in any prior cases involving the interspousal immunity defense. This case contains what may be the final unresolved matter in the legal life of this issue. Here, the negligent spouse, who was insured, died as a result of the accident. The automobile he was driving struck a tree. His wife, the plaintiff, was injured in the accident. She is free of negligence, is her husband's sole survivor, and is the only party interested in the estate. A guardian ad litem was appointed by the court to represent the interests of the defense. The appellee recovered a jury verdict in excess of the insurance policy limits, but the trial court, without objection, has reduced it to those policy limits.
The appellant contends that the final word on this subject has already been spoken by our supreme court and relies on Snowten, 475 So.2d at 1211, Roberts v. Roberts, 414 So.2d 190 (Fla. 1982), and Raisen v. Raisen, 379 So.2d 352 (Fla. 1979), cert. denied, 449 U.S. 886, 101 S.Ct. 240, 66 L.Ed.2d 111 (1980).
The appellee claims that Dressler v. Tubbs, 435 So.2d 792 (Fla. 1983), and Ard v. Ard, 414 So.2d 1066 (Fla. 1982), point to an exception under these facts.
In each case relied on by appellant, the supreme court has relied on appropriate public policy in reaching its judgment. However, in this case none of those policy considerations are applicable. Here there is no reason to be concerned about family harmony, children, interspousal friction, divorce, fraud, collusion, nor any other social nor legal policy concerns that are normally protected by this defense. In Raisen, both parties were alive. In Roberts, the plaintiff sued the estate of her deceased husband, but the act was intentional, there *978 was no insurance issue and there was a potential loss to be borne by another family member.
In Dressler, the wife's estate brought suit against the estate of the husband for wrongful death caused by his negligence. The court found that the doctrine of interspousal immunity did not apply because the wrongful death statute created a separate and distinct right in the wife's survivors. The supreme court reasoned, in distinguishing Raisen, that:

Raisen was decided on the grounds that allowing such a suit would be disruptive of marital unity and harmony. Obviously, Raisen cannot be applied to the factual situation here. Husband and wife are dead. There is no suit between spouses, just as there is no longer any marital unit to serve.
435 So.2d at 794. However, notwithstanding the analysis of Raisen in Dressler, it is clear, as defendant points out, that the court in Dressler was not ruling on the immunity issue, but was recognizing the statutory right of the survivors.
In Ard v. Ard, decided on the same day as Roberts, the court recognized that parental immunity was waived to the extent of available insurance coverage. But in Snowten the court held that interspousal immunity was not waived, even to the extent of available insurance. In Snowten the court considered Dressler and Ard, and made it clear that they did not signal a departure from Raisen. However, in Snowten, unlike this case, the negligent spouse had not died prior to suit, and the court again recited the traditional policy considerations in declaring that the interspousal immunity defense, unlike parental immunity, would not be waived even to the extent of insurance coverage.
The issue, then, is whether the supreme court in Snowten completely closed the door to a spouse injured by a spouse regardless of the facts and lack of policy considerations, or whether the facts dictated the result, just as in Dressler the facts permitted recovery.
We conclude that Snowten is distinguishable and the otherwise emphatic language in that case does not prevent the result reached here. In this case none of the policy considerations supporting interspousal immunity exist: the negligent spouse died in the accident, there are no children or other adverse estate interests, there is insurance, a guardian ad litem has been appointed, and no other public policy issue is served by barring recovery to the injured party, who would be otherwise entitled to compensation from the carrier.
However, as to the second issue, appellant correctly points out that the insurance policy here did not provide coverage to a marital partner injured by that partner's insured spouse. The policy was issued in New York under a statute which specifically provided that there would be no coverage in such a case, unless it was specifically provided for in the insurance contract. N.Y. Ins. Law, § 3420(g) (McKinney 1985).
Appellee argues that Florida courts, in a choice of laws context, apply the law of the state having the most significant relationship to the transaction  in this case, Florida. See Bishop v. Florida Specialty Paint Co., 389 So.2d 999 (Fla. 1980). In Bishop the court did adopt the significant relationship test of the Restatement (Second) of Conflict of Laws §§ 145-146 (1971). However, the test adopted by Bishop applied only to the law of torts, not to contracts such as the one here.
In Gillen v. United Services Automobile Association, 300 So.2d 3 (Fla. 1974), the Florida Supreme Court declined to adopt Restatement (Second) of Conflict of Laws § 188 (1969)  the significant relationship test as applied to contracts. In determining which state's law applied to an automobile liability policy, this court in New Jersey Manufacturers Insurance Co. v. Robertazzi, 473 So.2d 235 (Fla. 4th DCA 1985), rev. denied, 484 So.2d 9 (Fla. 1986), refused to substitute the most significant relationship test with the traditional lex loci contractus rule, noting that the substitution in Bishop applied only to torts, and not to contracts. See Jemco, Inc. v. United Parcel *979 Service, Inc., 400 So.2d 499 (Fla. 3d DCA 1981), rev. denied, 412 So.2d 466 (Fla. 1982); Eagle Star Insurance Co. v. Parker, 365 So.2d 780 (Fla. 4th DCA 1978); State-Wide Insurance Co. v. Flaks, 233 So.2d 400 (Fla. 3d DCA), cert. dismissed, 238 So.2d 427 (Fla. 1970).
We must therefore reverse the trial court's ruling that the appellee could recover under the policy. Despite the significant contacts present between Florida and this insurance contract, New Jersey Manufacturers requires application of the law of New York, where the contract was made.
The appellant contends that only a substantial public policy, such as that found in uninsured motorist provisions, will permit Florida law to be applied to a contract consummated in another state. Gillen v. United Services Automobile Association, 300 So.2d at 3; Amica Mutual Insurance Co. v. Gifford, 434 So.2d 1015 (Fla. 5th DCA 1983); Safeco Insurance Co. of America v. Ware, 424 So.2d 907 (Fla. 4th DCA 1982); Decker v. Great American Insurance Co., 392 So.2d 965 (Fla. 2d DCA 1980), rev. denied, 399 So.2d 1143 (Fla. 1981). However, that is not correct. Florida courts have applied Florida law in interpreting an insurance contract, using the significant relationship test under facts similar to those in this case. Petrik v. New Hampshire Insurance Co., 379 So.2d 1287 (Fla. 1st DCA 1979), cert. denied, 400 So.2d 8 (Fla. 1981).
The facts of this case show significant contacts between Florida and this insurance transaction. However, since this court in New Jersey Manufacturers expressly refutes the significant relationship test in favor of the lex loci contractus rule, the trial court's ruling on the issue must be reversed. We certify the following questions to the Supreme Court as a matter of great public importance:
I. DOES THE LEX LOCI CONTRACTUS RULE GOVERN THE RIGHTS AND LIABILITIES OF THE PARTIES IN DETERMINING THE APPLICABLE LAW ON AN ISSUE OF INSURANCE COVERAGE, PRECLUDING CONSIDERATION BY THE FLORIDA COURTS OF OTHER RELEVANT FACTORS, SUCH AS THE SIGNIFICANT RELATIONSHIP BETWEEN FLORIDA AND THE PARTIES AND/OR THE TRANSACTION?
II. DOES THE DOCTRINE OF INTERSPOUSAL IMMUNITY BAR AN OTHERWISE VALID CLAIM BY AN INJURED PASSENGER WHOSE NEGLIGENT SPOUSE DIED AS A RESULT OF THE ACCIDENT, WHERE THE CLAIM IS LIMITED TO THE AMOUNT OF INSURANCE COVERAGE, THE PLAINTIFF IS THE ONLY PARTY INTERESTED IN THE ESTATE AND A GUARDIAN AD LITEM IS APPOINTED?
REVERSED.
ANSTEAD, J., concurs.
GLICKSTEIN, J., concurs in part and dissents in part with opinion.
GLICKSTEIN, Judge, concurring in part and dissenting in part.
I agree with the majority's analysis of the issue whether New York or Florida law governs the disposition of the case, albeit I have some concerns that certain facts we do not know may bear on the choice of laws question. There is case law which suggests the question may depend on whether the insurer had adequate notice that the covered vehicle was housed in Florida, and whether the insured had taken affirmative steps to establish residence here. See Gillen v. United Services Automobile Association, 300 So.2d 3 (Fla. 1974). In my view, it would be wise to rule upon that issue and decline to rule upon the issue of interspousal immunity.
Upon the issue of interspousal immunity, I think it wise to certify appropriate questions as was done in Jones v. Hoffman, 272 So.2d 529 (Fla. 4th DCA 1973), upon significant issues but I would prefer that we avoid the criticism that followed in Hoffman v. Jones, 280 So.2d 431 (Fla. 1973), which we can avoid here by expressing our value judgments without ruling.
*980 Recently, this writer was given the opportunity to view Judge Aldisert's The Judicial Process (1976), wherein eloquent essays describe the anatomy of judge-made law. In less than eloquent fashion, this writer has often described our work as appellate judges to be, more often than not, a verbalizing of our individual value judgments, however relative and nonabsolute they may be.
The majority here recites, in a logical manner, its reasons for not applying interspousal immunity to the facts of this case. By the time this case is reviewed by the supreme court, two of the majority in Snowten will have been replaced by new justices, with their own value judgments. It seems fitting for them now to say what this state's law shall be. See also, in this vein, Glick & Emmert, Stability and Change: Characteristics of State Supreme Court Judges, 70 Judicature 107 (1986).
In this court, we might not be as busy as Hercules in cleaning up things; but we do an abundance of janitorial work. While it is pleasurable, when the supreme court has not established policy, for us to establish it in a given case  pending that court's subsequent consideration  I would be satisfied if we spoke our mind without establishing policy.
NOTES
[1] We note, however, that this judgment preceded the decision of the supreme court in Snowten v. United States Fidelity and Guaranty Co., 475 So.2d 1211 (Fla. 1985).