523 So.2d 1126 (1988)
Josephine STURIANO, Petitioner,
v.
Martin BROOKS, As Guardian Ad Litem of the Estate of Vito Sturiano, Deceased, Respondent.
No. 69743.
Supreme Court of Florida.
March 24, 1988.
Rehearing Denied May 16, 1988.
Leonard Robbins, Joseph J. Huss and Linda Raspolich Pratt of Abrams, Anton, Robbins, Resnick, Schneider & Mager, P.A., Hollywood, for petitioner.
Steven Billing of Billing, Cochran & Heath, and Nancy Little Hoffmann of Nancy Little Hoffmann, P.A., Fort Lauderdale, for respondent.
KOGAN, Justice.
This action is before the Court on review of a decision by the Fourth District Court *1127 of Appeal, Brooks v. Sturiano, 497 So.2d 976 (Fla. 4th DCA 1986). Because that court certified two questions to this Court as being of great public importance, we have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
The petitioner, Mrs. Sturiano, was injured when the car in which she was a passenger, struck a tree. Her husband, Vito Sturiano, the driver of the car, was killed in the collision, and Mrs. Sturiano brought an action against his estate alleging negligence on the part of Mr. Sturiano. Because Mrs. Sturiano was also the personal representative of her husband's estate, a guardian ad litem was appointed to represent the interests of the estate. Other than Mrs. Sturiano, Vito Sturiano was survived by no heirs or lineal descendents.
Following a jury verdict for Mrs. Sturiano and a reduction to the amount of applicable insurance coverage, Brooks, the guardian ad litem, appealed to the fourth district. That court held the doctrine of interspousal immunity did not bar the action, reasoning that the traditional policy reasons for maintaining the doctrine simply did not apply. However, the court reversed the verdict, holding the doctrine of lex loci contractus required that New York law apply because the contract was executed there. Under a New York statute, the action is barred unless the insurance policy specifically includes coverage for claims between spouses. Absent such a provision, no coverage exists. The fourth district then certified questions regarding both issues to this Court.
Both certified questions involve challenges to established common law doctrines followed in Florida. The first question, which we will answer last, involves the conflict of laws doctrine known as lex loci contractus. The other question, which we shall address first, requires this Court to again examine the doctrine of interspousal tort immunity. That question, as phrased by the district court, asks:
DOES THE DOCTRINE OF INTERSPOUSAL IMMUNITY BAR AN OTHERWISE VALID CLAIM BY AN INJURED PASSENGER WHOSE NEGLIGENT SPOUSE DIED AS A RESULT OF THE ACCIDENT, WHERE THE CLAIM IS LIMITED TO THE AMOUNT OF INSURANCE COVERAGE, THE PLAINTIFF IS THE ONLY PARTY INTERESTED IN THE ESTATE AND A GUARDIAN AD LITEM IS APPOINTED?
497 So.2d at 979. We answer this question in the negative and approve the district court decision regarding the issue of interspousal tort immunity.
The doctrine of interspousal tort immunity has a long and established history in Florida law. This common law doctrine has, until this decade, barred actions by one spouse against the other.[1] Recently, however, inroads have been made eroding the traditional basis for upholding the doctrine.[2] The policy reasons for upholding the doctrine in these instances either do not exist or cannot justify immunity from liability.
These policy considerations have been debated strenuously in judicial opinions for many years. The doctrine of interspousal tort immunity has its origins in the fiction that the marriage of two people creates a unified entity of one singular person.[3] The reasoning was that a person or entity cannot sue itself. Despite dicta to the contrary in prior opinions of this Court, we believe that this outdated policy consideration can no longer be regarded as a valid reason to bar actions. We no longer live in an age where the wife is subservient to her husband. A married woman now has power to control her separate property and enter into contracts with her husband.[4] With these expansions of individual freedom, *1128 legal status, and power, it can no longer be said that a woman becomes part of an entity represented by the husband. Thus "the common law unity concept is no longer a valid justification for the doctrine of interspousal immunity."[5] Several other reasons to bar interspousal actions, however, still exist under certain conditions. Domestic tranquility, peace and harmony in the family unit, and the possibilities of fraud or collusion are the most frequently cited policy reasons for maintaining interspousal immunity. In cases where these considerations apply, the doctrine of interspousal immunity shall continue to bar actions between spouses.
This Court's most recent pronouncement on this issue, Snowten v. United States Fidelity and Guaranty Co., 475 So.2d 1211 (Fla. 1985), demonstrates the application of interspousal immunity. In that case, the injured plaintiff and the negligent defendant spouse were both living. Any recovery would be covered by an applicable insurance policy, so there was ample reason to believe collusion was a possibility. Alternatively, the spectre of a lawsuit by one spouse charging negligence against the other spouse would be extremely disruptive to the family, causing significant disharmony within the family unit. This state has long maintained a policy of promoting family harmony. The lawsuit in the Snowten case would have only served to promote marital discord, assuming the couple was not working in collusion to perpetrate a fraud upon the insurance company.
In this case, however, there is no fear of disharmony or collusion. Sadly, Vito Sturiano is dead, leaving only Mrs. Sturiano as the sole remaining member of the family. While this tragedy works a great loss on Mrs. Sturiano, it also clears the way for an action against the estate. Because the family unit died with Vito Sturiano, there is no marital harmony to disrupt, no domestic tranquility to destroy. Moreover, we cannot presume any possibility of collusion or fraud when there is nobody with whom she could conspire.
Brooks, the guardian ad litem, argues that the doctrine of interspousal immunity should continue without exception, regardless of the absence of policy reasons for doing so. He contends that Snowten should control and interspousal tort immunity must apply in all cases involving actions between spouses to maintain consistency in law. We disagree. Snowten is clearly distinguishable on the facts. In that case, because both spouses were alive, the policy reasons for barring the action were strong. Here, because the defendant spouse is deceased, the policy reasons for barring the action do not exist. Moreover, in this case, there are no surviving lineal descendents, and thus no one left to be victimized by a disruption of the family unit. We will not blindly adhere to a doctrine that has no application to these facts. To do so would promote injustice for the sake of expediency and consistency.
We note at this point that Snowten and the doctrine of interspousal tort immunity are still good law. Actions between spouses must be barred when the policy reasons for maintaining the doctrine exist, such as the fear of disruption of the family or other marital discord, or the possibility of fraud or collusion. However, under the circumstances of this case, we hold that when no such policy considerations exist, the doctrine of interspousal tort immunity is waived to the extent of applicable liability insurance.
The other question posed by the fourth district requires us to address the doctrine of lex loci contractus. Specifically, we must examine whether the rule requiring that the laws of the jurisdiction where the contract was executed should apply. The fourth district has certified the following question:
DOES THE LEX LOCI CONTRACTUS RULE GOVERN THE RIGHTS AND LIABILITIES OF THE PARTIES IN DETERMINING THE APPLICABLE LAW ON AN ISSUE OF INSURANCE COVERAGE, PRECLUDING CONSIDERATION *1129 BY THE FLORIDA COURTS OF OTHER RELEVANT FACTORS, SUCH AS THE SIGNIFICANT RELATIONSHIP BETWEEN FLORIDA AND THE PARTIES AND/OR THE TRANSACTION?
497 So.2d at 979. We answer the certified question in the affirmative, limiting this answer to contracts for automobile insurance, and approve the decision of the district court.
The Sturianos, lifelong residents of New York, purchased automobile insurance in New York six years prior to the accident which took the life of Vito Sturiano and injured Josephine Sturiano. Subsequently, the couple moved to Florida each year for the winter months. They did not notify the insurance company of this migration, and the insurance company had no way of knowing that such a move had taken place.
Under the doctrine of lex loci contractus, it is clear that New York law must apply. That rule specifies that the law of the jurisdiction where the contract was executed should control. However, in recent years this doctrine has been criticized and, in several jurisdictions,[6] discarded in favor of the more flexible "significant relationships" test.
That test, as stated in the Restatement (Second) of Conflict of Laws § 188 (1971), provides:
§ 188. Law Governing in Absence of Effective Choice by the Parties
(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.
(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
(a) the place of contracting,
(b) the place of negotiation of the contract,
(c) the place of performance,
(d) the location of the subject matter of the contract, and
(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.
These contacts are to be evaluated according to their relative importance with respect to the particular issue.[7]
Thus, under the Restatement view, and seemingly the trend of courts around the nation, the place the contract is executed is only one of five factors used in determining which jurisdiction's law should control.
Sturiano argues that in this modern, migratory society, choice of law rules must be flexible to allow courts to apply the laws which best accommodate the parties and the host jurisdiction. She contends that the archaic and inflexible rule of lex loci contractus does not address modern issues or problems in the area of conflict of laws. While it is true that lex loci contractus is an inflexible rule, we believe that this inflexibility is necessary to ensure stability in contract arrangements. When parties come to terms in an agreement, they do so with the implied acknowledgment that the laws of that jurisdiction will control absent some provision to the contrary. This benefits both parties, not merely an insurance company. The view espoused in the Restatement fails, in our opinion, to adequately provide security to the parties to a contract.
Although lex loci contractus is old, it is not yet outdated. The very reason Sturiano gives as support for discarding lex loci contractus, namely that we live in a migratory, transitory society, provides support for upholding that doctrine. Parties have a *1130 right to know what the agreement they have executed provides. To allow one party to modify the contract simply by moving to another state would substantially restrict the power to enter into valid, binding, and stable contracts. There can be no doubt that the parties to insurance contracts bargained and paid for the provisions in the agreement, including those provisions that apply the statutory law of that state.
We recognize that this Court has discarded the analogous doctrine of lex loci delicti with respect to tort actions[8] and limitations of actions.[9] However, we believe that the reasoning controlling those decisions does not apply in the instant case. With tort law, there is no agreement, no foreseen set of rules and statutes which the parties had recognized would control the litigation. In the case of an insurance contract, the parties enter into that contract with the acknowledgment that the laws of that jurisdiction control their actions. In essence, that jurisdiction's laws are incorporated by implication into the agreement. The parties to this contract did not bargain for Florida or any other state's laws to control. We must presume that the parties did bargain for, or at least expected, New York law to apply.
For these reasons, we answer the certified question concerning conflict of laws in the affirmative, limiting that answer to situations involving automobile insurance policies. As stated, we answer the certified question concerning interspousal immunity in the negative and approve the decision of the Fourth District Court of Appeal.
It is so ordered.
McDONALD, C.J., and OVERTON, SHAW and BARKETT, JJ., concur.
GRIMES, J., concurs with an opinion, in which OVERTON, J., concurs.
EHRLICH, J., concurs in part and dissents in part with an opinion.
GRIMES, Justice, concurring.
The more I read of it the more I tend to agree with Dean Prosser when he said that "[t]he realm of the conflict of laws is a dismal swamp, filled with quaking quagmires, and inhabited by learned but eccentric professors who theorize about mysterious matters in a strange and incomprehensible jargon. The ordinary court, or lawyer, is quite lost when engulfed and entangled in it."[1]
The rule of lex loci contractus has been roundly criticized as mechanistic[2] and unworkable in practice.[3] It has seldom been applied to issues concerning the performance of a contract.[4] While it is true that more states retain lex loci contractus than have abandoned it, perhaps this is so only because many of them have not addressed the issue in recent years.[5] The emerging consensus, even in cases involving questions of contract validity, is to apply the most significant relationship test of section 188 of the Restatement (Second) of Conflict of Laws (1971).[6]
In this complex area of law concerning which I claim no expertise, I am inclined toward the recommendations of the American Law Institute. Because contractual disputes arise in such a great variety of settings, rules of broad application cannot do justice to the various interests and expectations involved. While the application of the significant relationship test may be less certain, it reflects a more realistic standard by which a choice of laws may be made. Furthermore, I believe the majority's *1131 concern for predictability and the parties' right to know what the agreement provides is adequately taken into account by factors (d) (the protection of justified expectations) and (f) (certainty, predictability and uniformity of result) of section 6 of the Second Restatement which is made applicable to section 188.
I nevertheless agree with the result reached in the instant case because it would come out the same under the Restatement. Section 193 of the Second Restatement sets forth a more specific rule with respect to casualty insurance:
§ 193. Contracts of Fire, Surety or Casualty Insurance
The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.
Here, the policy was issued by a New York company to an insured with a New York address to cover an automobile presumably garaged in New York. When the policy was issued, the insurer was entitled to assume that its potential for liability under the contract would not be increased by its policyholder taking the car to another state. In fact, there was nothing in the record to indicate that the insurer even knew that the insured kept the car in Florida for a substantial period of time each year. Thus, under any theory of conflicts, New York law should apply.
OVERTON, J., concurs.
EHRLICH, Justice, concurring in part and dissenting in part.
I concur with the Court's opinion as to the certified question last answered dealing with the conflict of law question, and I concur with the Court's reasoning in its response to the certified question first answered relating to the applicability of the doctrine of interspousal immunity, but I do not agree with the Court's answer to the question as phrased.
The Court expressly recognized that "Snowten,[1] and the doctrine of interspousal immunity are still good law." Maj. op. at p. 1128. However, the opinion then terminates its discussion of that issue by saying that where no policy considerations for maintaining the doctrine of interspousal immunity exist, the doctrine "is waived, to the extent of applicable liability insurance." Id.
I agree with the Court that there are no policy considerations in this case for maintaining the doctrine of interspousal immunity for the reasons well articulated in the opinion, and, in my view, where this is the case, the doctrine should not exist. The existence vel non of liability insurance should play no part.[2]
The bottom line of the Court's decision is that even though the plaintiff has recovered a judgment, it will be set aside because this Court has held, and correctly so, that New York law applies and hence there is no applicable insurance coverage, and since there is no insurance coverage, there is no waiver of interspousal immunity.
I would rephrase the certified question to read "Does the doctrine of interspousal immunity bar an otherwise valid claim by an injured passenger's spouse against the estate of the deceased spouse who died as a result of the accident, and whose negligence proximately caused such injuries." I *1132 would answer that question, as rephrased, in the negative, and to the extent necessary, I would recede from Roberts v. Roberts, 414 So.2d 190 (Fla. 1982).
NOTES
[1] See Corren v. Corren, 47 So.2d 774, (Fla. 1950).
[2] See Dressler v. Tubbs, 435 So.2d 792 (Fla. 1983) (Wrongful death action by wife's estate against husband's estate was not barred by the doctrine of interspousal immunity); Ard v. Ard, 414 So.2d 1066 (Fla. 1982) (abolishing interfamily (but not interspousal) immunity to the extent of liability insurance).
[3] Corren v. Corren, 47 So.2d 774 (Fla. 1950).
[4] § 708.08, Fla. Stat. (1977).
[5] Raisen v. Raisen, 379 So.2d 352, 357 (Fla. 1979) (England, C.J. and Adkins and Sundberg, JJ., dissenting), cert. denied, 449 U.S. 886, 101 S.Ct. 240, 66 L.Ed.2d 111 (1980).
[6] See, e.g., Wood Bros. Homes, Inc. v. Walker Adjustment Bureau, 198 Colo. 444, 601 P.2d 1369 (1979); Champagnie v. W.E. O'Neil Constr. Co., 77 Ill. App.3d 136, 32 Ill.Dec. 609, 395 N.E.2d 990 (1979); Choate, Hall & Stewart v. SCA Services, Inc., 378 Mass. 535, 392 N.E.2d 1045 (1979); State Farm Mut. Auto. Ins. Co. v. Simmons's Estate, 84 N.J. 28, 417 A.2d 488 (1980); Auten v. Auten, 308 N.Y. 155, 124 N.E.2d 99 (1954).
[7] Restatement (Second) of Conflict of Laws § 181 (1971).
[8] Bishop v. Florida Specialty Paint Co., 389 So.2d 999 (Fla. 1980).
[9] Bates v. Cook, Inc., 509 So.2d 1112 (Fla. 1987).
[1] Prosser, Interstate Publication, 51 Mich.L.Rev. 959, 971 (1953).
[2] R. Weintraub, Commentary on the Conflict of Laws, § 7.3A (3d ed. 1986).
[3] E. Scoles and P. Hay, Conflict of Laws, § 18.13 (1984).
[4] A. Ehrenzweig, Conflict of Laws, § 174 (1962).
[5] E. Scoles and P. Hay, Conflict of Laws, § 18.21 (1984).
[6] R. Weintraub, Commentary on the Conflict of Laws, § 7.3D (3d ed. 1986).
[1] In Snowten v. United States Fidelity and Guaranty Co., 475 So.2d 1211 (Fla. 1985), the certified question "[i]s the doctrine of interspousal immunity waived, to the extent of available liability insurance, when the action is for a negligent tort" was answered in the negative.
[2] While the Court's answer to the certified question dealing with interspousal immunity seemingly is a victory for a plaintiff, I think this is nothing more than a Pyrrhic victory because this Court has approved the inclusion of the family exclusion clause in liability policies. Florida Farm Bureau Insurance Co. v. Government Employees Insurance Co., 387 So.2d 932 (Fla. 1980).