## THE CELOTEX CORPORATION v THE AETNA CASUALTY AND SURETY COMPANY, et al.

### Case No. 79-5885

Thirteenth Judicial Circuit, Hillsborough County

April 28, 1989

### APPEARANCES OF COUNSEL

### OPINION OF THE COURT

JOHN G. HODGES, Circuit Judge (Retired)

### *MEMORANDUM OPINION AND PARTIAL SUMMARY JUDGMENT*

THIS CAUSE came on for consideration on cross motions of Plaintiff THE CELOTEX CORPORATION ("Celotex") and Defendant THE HOME INSURANCE COMPANY ("Home") for partial summary judgment as to coverage under Home insurance policy HEC 9557890. A hearing was held before the undersigned on March 1, 1989, during which Celotex and Home were represented by their respective counsel of record and argument was heard.

Plaintiff Celotex has incurred liabilities as a result of injuries sustained by claimants who were exposed to asbestos fibers contained in building materials that were manufactured by it and certain predecessor companies, including the Philip Carey Manufacturing Company ("Philip Carey"). Celotex seeks indemnification for these liabilities under a number of different primary and excess liability insurance policies that were issued not to it, but to the Glen Alden Corporation ("Glen Alden"). Neither Glen Alden nor any of its subsidiaries engaged in the manufacture or sale of products containing asbestos fibers prior to Glen Alden's acquisition of Philip Carey by merger on June 1, 1967. Philip Carey did manufacture and sell such products.

The policy that is now before the Court on crossmotions for partial summary judgment is HEC 9557890, an excess liability policy (hereafter, "HEC 9557890" or "the policy") issued by Home to "Glen Alden Corporation and/or its Subsidiaries or Affiliated Companies." The policy's effective date—May 16, 1967—pre-dates Glen Alden's acquisition of Philip Carey. On that date Glen Alden was engaged, through a division and subsidiaries, only in the business of operating motion picture theatres and manufacturing textiles.

Celotex, a successor in interest to Philip Carey, contends that Home has an obligation to indemnify it under HEC 9557890 because (1) Philip Carey was an "affiliated company" of Glen Alden prior to the effective date of the policy, (2) P.C. Co., a subsidiary of Glen Alden that was formed prior to the effective date of the Home policy, received the assets and liabilities of Philip Carey following the merger of Philip Carey into Glen Alden on June 1, 1967, and (3) the policy should be read to include any company that became an affiliate or subsidiary of Glen Alden at any time during the policy period.

Home strongly disagrees with Celotex's arguments. It asserts that HEC 9557890 provides no coverage to Celotex for asbestos-related liabilities because Philip Carey, the manufacturer of products containing asbestos, was never covered under the policy. Home contends that Philip Carey was not a subsidiary or affiliate of Glen Alden as of the effective date of the policy. In addition, Home argues that the policy does not cover companies acquired by Glen Alden after the policy's effective date in the absence of an endorsement adding such companies to the coverage.

Finally, Home argues tht the fact that P.C. Co. was formed prior to the effective date of the policy is not controlling because that company was a mere corporate shell that was not actively engaged in any business activities, much less the manufacture and sale of products containing asbestos fibers, until after the effective date of the policy.

140

The only issue presented by these cross-motions for summary judgment is whether HEC 9557890 provides coverage to Celotex. Discovery has been completed, there is no genuine issue as to any material fact, the difficult issues presented have been thoroughly briefed by both parties, and extensive oral argument has been heard by the Court. Celotex and the Home agree, and the Court has determined, that the "existence of coverage" issue can properly be decided under Rule 1.510 of the Florida Rules of Civil Procedure. *See e.g. Whitten v Progressive Cas. Ins. Co.,* 410 So.2d 501, 506 (Fla. 1982) ("summary judgment is rendered upon a showing that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.").

The Court, having considered the helpful arguments of able counsel and the comprehensive memoranda of law and affidavits and voluminous documents filed by the parties, concludes that there is no genuine issue of material fact and that, as a matter of law, Home's policy provides coverage to Celotex based upon the following;

### *Pertinent Facts*

1. Celotex is a corporation organized and existing under the laws of the State of Delaware. Its principal offices are in Tampa, Florida. Celotex is a wholly-owned subsidiary of the Jim Walter Corporation.

2. Home is an insurance company that is organized under the laws of the State of New Hampshire. Its principal offices are in New York City.

3. The Home policy at issue, HEC 9557890, affords coverage to the insured in excess of certain underlying excess liability policies issued by Lloyds of London. The policy contains a $5 million limit for each occurrence and a $5 million aggregate for each annual period.

4. HEC 9557890 was countersigned by a representative of the Home on June 28, 1967. The inception date of the policy, however, is stated on the face of the policy as May 16, 1967. The term of the policy originally ran from the inception date to June 16, 1970, but was subsequently extended to January 1, 1971.

5. The insured under the policy is "Glen Alden Corporation and/or its Subsidiaries or Affiliated Companies." Neither of the terms "Subsidiaries" or "Affiliated Companies" is defined in the policy, nor is any list or schedule of the subsidiaries or affiliated companies included within or attached to the policy.

6. In early 1966, Glen Alden Corporation ("Old Glen Alden")

141

acquired through a tender offer and additional purchases of stock on the open market controlling interest in 282,521 shares of common stock in Philip Carey Manufacturing Company ("Old Philip Carey"), representing over 28% of the total number of common shares in the company. Old Glen Alden thereby became by far the largest holder of stock in Old Philip Carey. The next largest stockholder held only about one-fourth the number of shares owned by Old Glen Alden. Moreover, Old Glen Alden owned more stock in Philip Carey than the combined ownership interest of the next 10 largest stockholders. However, prior to the merger of Philip Carey into Glen Alden on June 1, 1967, Glen Alden and Philip Carey independently conducted their own business affairs.

7. In December, 1966, Old Glen Alden, which was, at that time a Pennsylvania corporation, entered into two separate agreements for merger. The first merger agreement provided that Old Glen Alden would in effect re-incorporate itself in Delaware by merging with and into one of its wholly owned subsidiaries, Glen Alden Company, Inc., a Delaware corporation, and that another Glen Alden subsidiary would simultaneously acquire all of the assets of the B.V.D. Company ("BVD"). The second merger agreement provided that Old Philip Carey would merge with and into Glen Alden Company, Inc. and that all assets of Old Philip Carey would at the same time be transferred to a wholly owned subsidiary of the surviving corporation.

8. On December 1, 1966, Old Glen Alden incorporated, in Ohio, a wholly owned subsidiary, known as P.C. Company ("P.C. Co."). The Articles of Incorporation of P.C. Co. specifically described the business of the new company:

To manufacture, fabricate, design, develop, buy, sell, distribute, lease and otherwise deal in and with asphalt shingles and roll roofing, built-up roofing products, roof coatings, cements and emulsions, fiber glass home insulation, asbestos cement products, control joint material and dampproofing products, flooring products, pipeline products, special asbestos and organic papers, heat insulation products, plumbing fixtures and equipment, heating equipment (including water heating equipment), kitchen and bathroom cabinets, kitchen range hoods, fans, door chimes, radio inter-coms, and bathroom accessories, doors, frames and partitions, light fixtures, kitchen equipment, and miscellaneous manufactured and resale products, to conduct insulation contracting operations, and to mine, mill and sell asbestos fibers.

9. The Boards of Directors of Old Glen Alden and Old Philip Carey

142

approved the proposed merger between the companies on December 23, 1966. The shareholders of each of the corporations approved the proposed merger on April 12, 1967.

10. The merger of Old Glen Alden and Glen Alden-Delaware, Inc. with and into Glen Alden COmpany (which had by then changed its name to Gwalco Corporation) and the acquisition of assets of B.V.D. by and Old Glen Alden subsidiary known as VDOB Corporation, was consummated on May 18, 1967, two days after the inception date of Home's policy. Gwalco Corporation simultaneously changed its name to Glen Alden Corporation ("New Glen Alden"), and VDOB Corporation changed its name to The B.V.D. Company.

11. On June 1, 1967, the merger of Old Philip Carey into New Glen Alden was consummated and the assets of Old Philip Carey were transferred to P.C. Co., which had by then changed its name to XPRU Corporation ("XPRU"). XPRU simultaneously changed its name to Philip Carey Manufacturing Company ("New Philip Carey"). Prior to the merger of Philip Carey into Glen Alden, other than the Plan and Agreement of Merger, there was no material relationship between Philip Carey and Glen Alden or any of their respective affiliates, officers or directors.

12. Home's policy was one of a number of policies providing excess CGL coverages to Glen Alden "and/or its Subsidiaries or Affiliated Companies." Home's policy provided $5,000,000 of excess liability insurance over and above four policies issued by Lloyd's of London ("Lloyd's"), totalling $5,000,000 in coverage, but beneath a $5,000,000 excess policy issued by Continental Casualty Company ("Continental") and another $5,000,000 excess policy issued by American Reinsurance Company ("Am-Re").

13. Home charged an initial premium of $4,500 for its coverage of Glen Alden, compared to $3,500 each in premiums for Continental and Am-Re. The total premiums charged for the Philip Carey endorsements under all of the Lloyd's policies was a pro rata share of a $1,950 three year premium above the $10,237 premium for Glen Alden.

14. The Continental and Am-Re policies were each issued and had effective dates at about the same times as Home's policy.[1] The Continental and Am-Re policies contain endorsements relating to Philip Carey. These endorsements each include schedules of underlying coverage which reflect Home as providing underlying coverage to Philip

---

[1] Continental's policy was issued on June 22, 1967, but had an effective day of May 24, while Am-Re's policy was issued on June 8, 1967, and had the same effective date as Continental's policy.

Carey. The endorsements also both state that they involved no additional premium.

15. The four Lloyd's policies were issued in early 1965 and further defined the insured as including subsidiary and affiliated companies "as now or hereafter constituted and of which prompt notice has been given to Underwriters." Despite the inclusion of this language in the definition of the insured, Lloyd's added endorsements to each of its policies to list Philip Carey as an "Additional Assured" and charged additional premiums for the endorsements.

16. Home's policy does not have an endorsement listing either B.V.D. or Philip Carey as named insured. The policy does include endorsements adding as named insured several other corporations, Stanley Warner Corporation, Briggs Manufacturing Company and Schenley Industries, for which additional premiums were charged, but Glen Alden's interests in these corporation were, for the most part, acquired long after Home's policy was issued. These acquisitions significantly expanded the scope and nature of Glen Alden's business.

17. Even though Home's policy does not include an endorsement referring to Philip Carey by name, Home's policy by its terms incorporates by reference the terms and conditions of the underlying Lloyd's policies, which included endorsements naming Philip Carey as an insured. Item 1 of the Conditions in Home's policy specifically provides:

This Policy is subject to the same warranties, terms and conditions (except as otherwise provided herein) as are contained in or may be added to the Underlying Coverage prior to the happening of an accident or occurrence, whichever is applicable, for which claim is made hereunder.

### CONCLUSIONS OF LAW

18. The Parties agree, and the Court has concluded, that the motions at issue are to be decided according to the law of New York. *Sturiano v Brooks*, 523 So.2d 1126 (Fla. 1988).

19. Strong support for the positions taken by Home appears from a superficial view of the evidence; however, the Court has concluded based on its substantial examination of the record and its consideration of the law of New York that Home's positions are insufficient as a matter of law.

20. The Court has thoughtful considered Home's arguments in opposition to each of the three grounds asserted by Celotex as a basis for coverage, namely that (1) Philip Carey was an "affiliated company" of Glen Alden prior to the effective date of the policy; (2) P.C. Co., a

144

subsidiary of Glen Alden that was formed prior to the effective date of the Home policy, received the assets and liabilities of Philip Carey following the merger of Philip Carey into Glen Alden on June 1, 1967; and (3) the policy should be read to include any company that became an affiliate or subsidiary of Glen Alden at any time during the policy period. After carefully analysis, the Court has concluded that the Home's arguments in opposition to each of the three grounds are legally insufficient.

21. With respect to the first ground, the Court notes that melange of inconsistent and conflicting authority regarding the meaning of the term "affiliate." This authority, at the very lease, creates an ambiguity which under New York law must be resolved in favor of Celotex, the insured. If Home wished to exclude a company such as Philip Carey from coverage, under the circumspection required by the factual complex of this case, it had a duty to use clear and precise language to do so.

22. With respect to the second ground, the Court rejects Home's contention that the formation of P.C. Company in December of 1966 was insufficient to provide a basis of coverage for Celotex. The insuror rather than the insured has the burden of demonstrating that an entity falling within the class of insureds was not intended to be insured or is subject to loss of its coverage if it commences business or acquires new assets after the effective day of the policy.

23. With respect to the third ground, the policy's use of the term "Subsidiaries or Affiliated Companies" is ambiguous as to whether this status is measured only at policy inception or any time during the policy period. This ambiguity again must be resolved under New York law in favor of the insured, Celotex.

24. Cautious and reflecting analysis of the case law has constrained the Court to also discard Home's contention that the doctrine of *contra proferentum* cannot apply until after the "insured" under an insurance policy has been determined.

Based on the foregoing, it is ORDERED AND ADJUDGED as follows:

1. That Motion for Summary Judgment of the Plaintiff is GRANTED, and the Motion for Summary Judgment of defendant Home is DENIED.

2. Summary Judgment be and hereby is entered in favor of Celotex to the effect that Home Policy HEC 9557890 provides coverage to Celotex.

145

DONE AND ORDERED in Chambers at St. Petersburg, Pinellas County, Florida, this 28th day of April, 1989.