**NORTHLAND CASUALTY COMPANY, Plaintiff,**

v.

**HBE CORPORATION, d/b/a Adam's Mark Hotel, Fred S. Kummer, Defendants.**

No. 6:00–CV–532ORL31DAB.

United States District Court, M.D. Florida. Orlando Division.

May 24, 2001.

Ronald L. Kammer, Andrew Edward Grigsby, Hinshaw & Culbertson, Miami, FL, for Northland Cas. Co.

Duncan B. Dowling, III, David C. Knapp, Rogers, Dowling, Fleming & Coleman, P.A., Orlando, FL, Michael M. Bayl-

son, Duane, Morris & Heckscher, Philadelphia, PA, for HBE Corp., Fred S. Kummer.

Duncan B. Dowling, III, Fleming & Coleman, P.A., Orlando, FL, Michael M. Baylson, Duane, Morris & Heckscher, Philadelphia, PA, for Seven Seventeen HB Philadelphia Corp., No. 2.

## ORDER

PRESNELL, District Judge.

The parties in this case disagree as to which law (or laws) govern this insurance coverage dispute—and, more particularly, their cross-motions for summary judgment (Doc. 38 and Doc. 45). This Court held a hearing on May 3, 2001 to address the issue, and now reaches the following conclusions as to choice of law.

*Background*

Defendant HBE Corporation ("HBE"), a Delaware corporation with its principal place of business in Missouri, operates a chain of Adam's Mark Hotels throughout the United States. Defendant Fred S. Kummer apparently operates HBE's Hotel and Resorts Division and owns a controlling interest in the stock of the privately held HBE. The Plaintiff, Northland Casualty Company ("Northland"), issued general liability policies to HBE.[1] Northland is a Minnesota corporation with its principal place of business in that state as well. It appears from the record that the policy was applied for, negotiated, and issued in Missouri.

HBE is defending itself against three lawsuits alleging that it intentionally discriminated against minorities in various ways: the *Hendrix–Frye* case, involving a North Carolina Adam's Mark; the *Stephens* case, involving an Adam's Mark in Pennsylvania; and the *Gilliam* case, now pending before another judge of this Court, and involving a Florida Adam's Mark.[2] The liability policy expressly provides coverage—with certain exceptions—for "personal injury," which is defined to include both "discrimination" and "violations of civil rights."

On April 25, 2000, Northland filed suit in this district, disclaiming coverage on various grounds respecting the *Gilliam* suit. On June 7, 2000, the Defendants countersued, seeking a declaration of coverage as to all three cases listed above. According to the parties, the dispute hinges at least in part on choice of law.

*Choice of Law*

A federal court, sitting in diversity, must apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). Under Florida law, a court makes a separate choice of law determination as to each issue under consideration. *Trumpet Vine Investments, N.V. v. Union Capital Partners I, Inc.*, 92 F.3d 1110, 1115 (11th Cir. 1996) (citing *Department of Corrections v. McGhee*, 653 So.2d 1091, 1092–93 (Fla. 1st DCA 1995), *aff'd* 666 So.2d 140 (Fla.1996), *and Colhoun v. Greyhound Lines, Inc.*, 265 So.2d 18, 21 (Fla.1972)).

---

1. According to the Defendants, the various policies, which provided coverage for consecutive periods, contain identical language as to the provisions at issue in the instant dispute. *See* Doc. 43 at note 2. Therefore, for ease of reference, this opinion will refer to the various policies as "the liability policy".

2. The events alleged in the *Gilliam* case also gave rise to a suit filed in this district against HBE by the United States, seeking only injunctive and declaratory relief.

In 1980, the Florida Supreme Court abandoned the traditional lex loci delicti rule for tort claims—which generally requires application of the law of the state where the harm occurred—in favor of the "most significant relationship" test set forth in § 145 of the Restatement (Second) of Conflict of Laws. *See Bishop v. Florida Specialty Paint Co.*, 389 So.2d 999 (Fla. 1980). To date, however, that court has not renounced its adherence to the traditional lex loci contractus rule for choice of law determination in contract disputes. Instead, subsequent to the *Bishop* decision, the Florida Supreme Court rejected the "more flexible" most significant relationship test in favor of the certainty of the lex loci contractus rule to determine choice of law in an automobile insurance coverage dispute.[3] *Sturiano v. Brooks*, 523 So.2d 1126 (Fla.1988) (Stating that "Although lex loci contractus is old, it is not outdated" and "When parties come to terms in an agreement, they do so with an implied acknowledgment that the laws of that jurisdiction will control absent some provision to the contrary."). In the wake of the *Sturiano* decision, Florida appellate courts have continued to apply lex loci contractus in a variety of contractual settings. *See, e.g., Nicole Santos v. Nicole–Sauri*, 648 So.2d 277 (Fla. 4th DCA 1995) (antenuptial agreement); *Bloch v. Berkshire Ins. Co.*, 585 So.2d 1137 (Fla. 3d DCA 1991) (life insurance dispute).

In 1990, however, the Eleventh Circuit Court of Appeals concluded that Florida courts would apply Florida law rather than the law suggested by lex loci contractus if the dispute involved insurance coverage connected to real property in Florida. In *Shapiro v. Associated International Ins.* *Co.*, 899 F.2d 1116 (11th Cir.1990), the general liability policy that was the subject of the dispute was issued and countersigned in California through a California broker, and the court recognized that application of the "archaic lex loci contractus rule" would require application of California substantive law. *Id.* at 1119. The *Shapiro* court also recognized that the Florida Supreme Court, in the *Sturiano* case, had recently reaffirmed lex loci contractus in an automobile insurance dispute. *Id.* Because the *Shapiro* dispute involved coverage for an accident occurring on real property, however, the Eleventh Circuit Court of Appeals made an "educated guess", *id.* at 1118–19, that the Florida Supreme Court would apply Florida law rather than California's:

> Although the Florida Supreme Court extended "the lex loci contractus rule [to] determine [ ] the rights and risks of the parties to automobile insurance policies on the issue of coverage" ... the court specifically limited its holding to contracts for automobile insurance, reasoning that we live in a migratory, transitory society and "[t]o allow one party to modify the contract simply by moving to another state would substantially restrict the power to enter into valid, binding, and stable contracts." *Sturiano*, 523 So.2d at 1129–30. Using the same reasoning, we believe that if faced with the facts of this case, the court would apply Florida law.... Because in the case at bar the location of the insured risk was stable, any doubt concerning a party's ability to "restrict the power to enter into valid, binding, and stable contracts" is dispelled. *Id.*

*Shapiro*, 899 F.2d at 1119 (brackets in original). The *Shapiro* court also found

---

**3.** The *Sturiano* court explicitly limited its choice of law analysis to automobile insur-ance contracts rather than all insurance con-tracts or contracts in general. *See id.*

that application of the most significant relationship test articulated in § 193 of the Restatement (Second) of Contracts "leads us to the same conclusion". *Id.* at 1119–20. Further, the *Shapiro* court said a Florida court would likely reject application of California law because of Florida's "strong interest" in regulating insurance when the risk is located in that state. *Id.* at 1121 (citing Florida insurance statutes). The *Shapiro* opinion also referred to its own "traditional deference to local law in cases involving the adjudication of interests in real property" and the Florida's application of the law of the situs in disputes centered on real property. *Id.* at 1121 (citing cases). Thus, although the particular basis for the decision is not crystal-clear, it is clear that in a situation very similar to the instant dispute—which also involves a dispute over insurance coverage for alleged personal injuries suffered on Florida real property—the Eleventh Circuit opted to apply Florida law rather than the law resulting from the application of the lex loci contractus rule.

No party has directed us to any Florida appellate decision criticizing the result reached in *Shapiro* or reaching a dissimilar conclusion on similar facts. On the other hand, the Eleventh Circuit reaffirmed the conclusion of the *Shapiro* court in *LaFarge Corp. v. Travelers Indemnity Co.*, 118 F.3d 1511, 1515 (11th Cir.1997), which involved a dispute over coverage for

environmental contamination of Florida real property:

> Even if we were not bound by the *Shapiro* court's conclusion that the Florida courts would apply the significant relationship test to a contract of insurance of real property in Florida,[4] we find it persuasive and adopt it here. Accordingly, we hold that the district court correctly applied the law of Florida to this dispute over a contract insuring real property in that state. *Id.*

■ Given the *Sturiano* court's continued adherence to lex loci contractus, and its insistence on certainty in the formation of contractual relationships, this Court might have opted, given a blank slate, to apply that "old [but] not outdated" rule to this dispute. The Court concludes, however, that the *Shapiro/LaFarge* line of cases requires application of the most significant relationship test set forth in § 193 of the Restatement (Second) of Conflict of Laws. That section, titled "Contracts of Fire, Surety or Casualty Insurance," provides that "[t]he validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6[5] to the transaction and the par-

---

**4.** As noted above, the *Shapiro* court advanced several possible rationales for applying Florida law, never explicitly adopting the most significant relationship test.

**5.** Section 6 of the Restatement (Second) of Choice of Law provides as follows:

§ 6. CHOICE–OF–LAW PRINCIPLES

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

ties, in which event the local law of the other state will be applied."

Comment C to Section 193 sets forth the rationale behind the section. It provides that:

The rule of this Section calls for application of the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless, with respect to the particular issue, some other state has a more significant relationship to the contract and the parties.... A number of reasons serve to explain why such importance is attached to the principal location of the insured risk. This location has an intimate bearing upon the risk's nature and extent and is a factor upon which the terms and conditions of the policy will frequently depend.... And it can often be assumed that the parties, to the extent that they thought about the matter at all, would expect that the local law of the state where the risk is to be principally located would be applied to determine many of the issues arising under the contract. Likewise, the state where the insured risk will be principally located during the term of the policy has a natural interest in the determination of issues arising under the insurance contract.

Comment F to that section provides guidance as to the application of the "most significant relationship" test in situations where the policy covers multiple risks in multiple states. That comment provides:

A special problem is presented by multiple risk policies which insure against

risks located in several states. A single policy may, for example, insure dwelling houses located in states X, Y and Z.... Presumably, the courts would be inclined to treat such a case, at least with respect to most issues, as if it involved three policies, each insuring an individual risk. So, if the house located in state X were damaged by fire, it is thought that the court would determine the rights and obligations of the parties under the policy, at least with respect to most issues, in accordance with the local law of X.

This "multiple policy" resolution to the choice of law problems inherent in a multiple risk policy was favorably cited by the Florida Supreme Court in *Shapiro*, 899 F.2d at 1119–20. Because the policy at issue in this case covered multiple risk locations in several states, this Court finds that Section 193 of the Restatement (Second) of Conflict of Laws, comment F, details the proper rule for deciding the instant dispute.

*Application*

 In accordance with the directive of § 193, Comment F, the law of Florida will control most of the coverage issues regarding the *Gilliam* suit and the related injunctive suit filed by the United States; the law of North Carolina will generally control coverage issues regarding the *Hendrix–Frye* suit; and the law of Pennsylvania will generally control as to coverage for the *Stephens* suit. Specifically, the Court will apply the law of the state where the particular hotel at issue is located in determining (1) whether the harms alleged

---

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

in the respective complaints arise from an "occurrence"; (2) whether those harms fall under the intended or expected acts exclusion;(3) whether those alleged harms constitute "personal injury," "bodily injury" or "advertising injury"; and (4) whether the policy provides coverage for a suit seeking only injunctive and declaratory relief. If the Court finds that coverage exists as to more than one of the underlying lawsuits, the law of Missouri will be applied to determine whether the allegations arise from more than a single occurrence—and thus whether the policy's "per occurrence" or "per year" limit applies—as this aggregation issue has no particular relationship to any one hotel.

*Public Policy*

In *Ranger Ins. Co. v. Bal Harbour Club,* 549 So.2d 1005 (Fla.1989), the Florida Supreme Court held that "the public policy of Florida prohibits an insured from being indemnified for a loss resulting from an intentional act of religious discrimination." *Id.* at 1009. After reviewing the rationale behind that determination, and the allegations of the *Gilliam* complaint, the Court concludes that (1) the Florida Supreme Court would make an identical determination with regard to indemnification for intentional acts of racial discrimination and (2) a fair reading of the *Gilliam* complaint shows that it alleges such intentional acts of racial discrimination. These conclusions raise the following questions:

1. Would Florida's public policy of forbidding indemnification for intentional acts of racial discrimination require a Florida state court to declare that no coverage exists in cases with no connection or only a minimal connection to Florida?

2. Is it possible, given the allegations in all four of the underlying lawsuits, that the insureds could be held liable for the intentional discrimination of others—for example, on vicarious liability or negligent retention grounds? If so, would this avoid any public policy prohibition against coverage for the insured's own acts of intentional discrimination, thus requiring Northland to defend and/or indemnify the insureds?

*Conclusion*

Now that the appropriate laws that will decide this dispute have been identified, the Court believes that the parties are entitled to another opportunity to address the dispositive issues under the proper standards. In addition, the Court requests that the parties address the two questions raised in the preceding paragraph. To that end, it is hereby

**ORDERED AND ADJUDGED** that the Defendants shall file with this Court a single memorandum of not more than 15 pages no later than 15 days after the entry of this order. In addition, the Plaintiff is **ORDERED** to file a reply brief of not more than 10 pages no later than 15 days after the filing of the Defendants' brief. Because, at least in some cases, the parties have already addressed the issues under the appropriate law, the parties may incorporate *specific* portions of their previous pleadings by reference.