643 So.2d 1130 (1994)
Claude AMARNICK, M.D., Appellant,
v.
The AUTOMOBILE INSURANCE COMPANY OF HARTFORD, CONNECTICUT and Aetna Casualty and Surety Company, Appellees.
No. 93-2580.
District Court of Appeal of Florida, Third District.
September 21, 1994.
Rehearing Denied November 9, 1994.
Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin and Joel S. Perwin, Miami, for appellant.
Richard A. Sherman and Rosemary B. Wilder, Fort Lauderdale, Ligman, Martin & Evans and Gordon J. Evans, Coral Gables, for appellees.
Before NESBITT, GERSTEN and GODERICH, JJ.
PER CURIAM.
The plaintiff, Claude Amarnick, M.D., appeals from a summary final judgment entered in favor of the defendants, Automobile Insurance Company of Hartford, Connecticut [AIC] and Aetna Casualty and Surety Company [Aetna]. We reverse and remand for trial.
The plaintiff sued Aetna and AIC, a division of Aetna, for uninsured motorist coverage arising from an automobile accident that occurred in West Palm Beach on January 2, 1991. The plaintiff was seriously injured while driving his 1985 Jaguar Sedan on I-95 when he swerved to avoid striking a tire that was on the highway. He then hit the median and lost control of his car, which eventually overturned.
Aetna issued and delivered a primary insurance policy and an excess automobile insurance policy in California that covered a *1131 1988 Chrysler Le Baron owned by the plaintiff. AIC alleges that it issued and delivered policy number 210SX26262439PCH in New York covering three other cars owned by the plaintiff: the 1985 Jaguar, a 1987 Lincoln, and a 1982 Mercedes Benz. This policy was in effect on the date of the accident. The plaintiff notified his insurance agent that the three automobiles were principally garaged in Florida. An Aetna Quality Control Document dated June 21, 1990, contains a notation that New York policy number 210SX26988245 is being canceled because the Lincoln and the Jaguar are now housed in Florida and that "coverage [is being] transferred to Florida # 210SX26262439."
The parties all filed cross-motions for summary judgment on the issue of uninsured motorist coverage. Aetna filed a motion for summary judgment on the California primary policy, asserting that the policy only covered the Chrysler Le Baron and that under California law there was no coverage for the plaintiff's accident in his Jaguar. AIC moved for summary judgment on the basis that the New York policy provided no coverage since New York law required some physical contact with another vehicle. The plaintiff moved for summary judgment asserting that he had automobile insurance coverage with AIC providing uninsured motorist coverage for three vehicles located in Florida.
Judge S. Peter Capua entered an order of summary judgment in favor of Aetna. The order did not address AIC's motion. The plaintiff filed a motion for clarification. Chief Judge Alan R. Schwartz, acting Circuit Court Judge, heard the motion for clarification. He reentered the summary judgment for Aetna on the California primary policy, which is not at issue in this appeal, granted the plaintiff's motion for summary judgment on the AIC policy, and granted the plaintiff's motion for summary judgment on the Aetna excess policy. The insurance companies then moved for rehearing on Chief Judge Schwartz's order.
Then, on October 8, 1993, Judge Capua issued an order stating that his original intention had been to enter summary final judgment for both Aetna and for AIC, but that due to an oversight he had left AIC out of the original summary judgment. Accordingly, Judge Capua entered a summary final judgment in favor of Aetna and AIC. The plaintiff appealed.
As the plaintiff correctly points out, the only appealable order is the final judgment entered by Judge Capua on October 8, 1993. This final judgment corrected any errors contained in the previous orders granting summary judgment. Thus, any issues raised as to the correctness of Chief Judge Schwartz's previous order are not relevant to this appeal.
The plaintiff contends that the trial court erred in entering final summary judgment in favor of AIC on the Florida policy, policy number 210SX26262439, and in favor of Aetna on its excess policy, policy number 210EX210015296. We agree.
Section 624.11(1), Florida Statutes (1993), provides that "[n]o person shall transact insurance in this state, or relative to a subject of insurance resident, located, or to be performed in this state, without complying with the applicable provisions of this code." In addition, section 627.727(1), Florida Statutes (1993), provides, in part, that "[n]o motor vehicle liability insurance policy which provides bodily injury liability coverage shall be delivered or issued for delivery in this state with respect to any specifically insured or identified motor vehicle registered or principally garaged in this state unless uninsured motor vehicle coverage is provided therein... ." The purpose of section 627.727 is to protect "persons who are insured under a policy covering a motor vehicle registered or principally garaged in Florida and who are impaired or damaged in Florida by motorists who are uninsured or underinsured and cannot thereby make whole the impaired party." Decker v. Great Am. Ins. Co., 392 So.2d 965, 968 (Fla. 2d DCA 1980), rev. denied, 399 So.2d 1143 (Fla. 1981) (citing Brown v. Progressive Mut. Ins. Co., 249 So.2d 429 (Fla. 1971); State Farm Mut. Auto. Ins. Co. v. Diem, 358 So.2d 39 (Fla. 3d DCA 1978)).
AIC has argued that the policy was delivered to the plaintiff in New York. However, the record reveals that in July of 1987, the plaintiff notified his insurance agent that he had transferred the Jaguar to Florida. Then, in April of 1990, when the plaintiff *1132 moved the Lincoln to Florida, Aetna canceled the New York policy and transferred coverage of both the Jaguar and the Lincoln to the AIC Florida policy, which at that time covered the Mercedes. The new Declarations Page issued on July 12, 1990, stated that the AIC policy covered all three cars, including the Jaguar, which were principally garaged in West Palm Beach, Florida. Since AIC knew that the Jaguar was garaged in Florida, the policy was written to cover risks that would occur in Florida. Therefore, under the analysis of Aperm of Florida. v. Trans-Coastal Maintenance Co., 505 So.2d 459 (Fla. 4th DCA), rev. denied, 515 So.2d 229 (Fla. 1987), it follows that the policy was issued for delivery in Florida. See also East Coast Ins. Co. v. Cooper, 415 So.2d 1323 (Fla. 3d DCA 1982). Because the AIC policy covered a vehicle principally garaged in Florida and was issued for delivery in Florida, it must comply with Florida law and provide uninsured motorist coverage.
We next turn to the issue of whether the plaintiff in this case can benefit from uninsured motor vehicle coverage. However, we are unable to reach a conclusion where genuine issues of material fact remain. See Allstate Ins. Co. v. Bandiera, 512 So.2d 1082 (Fla. 4th DCA 1987) (passenger could not recover under uninsured motorist provisions where origin of cinder block was unknown), rev. denied, 520 So.2d 583 (Fla. 1988). The plaintiff contends that part of a truck tire and rim, approximately five feet long, was propelled into his car by a phantom vehicle. The insurance companies contend that there was no tire or rim involved. They contend it was just a piece of rubber tire that was three to six feet long. One eyewitness traveling in the opposite direction testified that she saw a car just ahead of the plaintiff's car run over the piece of tire. Two other eyewitnesses following the plaintiff testified that he had a clear view of the tire and that he swerved to avoid hitting it and lost control of his car.
In conclusion, we reverse the final summary judgment entered in favor of AIC and Aetna, and remand this cause for a trial.