United States Court of Appeals,

Eleventh Circuit.

No. 95-4748.

Rita STROCHAK, Plaintiff-Appellant,

v.

 FEDERAL INSURANCE COMPANY, a New Jersey Corporation, Defendant-Appellee,

Keevily, Spero-Whitelaw, Inc., Defendant.

April 8, 1997.

Appeal from the United States District Court for the Southern District of Florida.  (No. 93-8500-CIV-KLR), Kenneth L. Ryskamp, District Judge.

Before KRAVITCH and BARKETT, Circuit Judges, and HARRIS[*], Senior District Judge.

PER CURIAM:

 CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF FLORIDA, PURSUANT TO ARTICLE V, SECTION 3(b)(6) OF THE FLORIDA CONSTITUTION.  TO THE SUPREME COURT OF FLORIDA AND THE HONORABLE JUSTICES THEREOF:

Appellant Rita Strochak appeals the district court's order granting summary judgment on her contract claim for excess uninsured motorist coverage based on Florida Statute § 627.727(2) (1990)[1] in favor of Appellee Federal Insurance Company ("FIC").

---

[*]Honorable Stanley S. Harris, Senior U.S. District Judge for the District of Columbia, sitting by designation.

[1]Florida Statute § 627.727(2) provides, in relevant part: "The limits set forth in this subsection, and the provisions of subsection (1) which require uninsured motorist coverage to be provided in every motor vehicle policy delivered or issued for delivery in this state, do not apply to any policy which does not provide primary liability insurance that includes coverage for liabilities arising from the maintenance, operation, or use of a specifically insured motor vehicle.  However, an insurer issuing such a policy shall make available as a part of the application for such policy, and at the written request of an insured, limits up to the bodily injury liability limits contained in such

This case presents an important issue of Florida law that has not been addressed by the Supreme Court of Florida. Thus, we believe that the issue is appropriate for resolution by Florida's highest court. We therefore defer our decision in this case pending certification of the question to the Supreme Court of Florida. *See Varner v. Century Finance Co., Inc.,* 720 F.2d 1228 (11th Cir.1983).

## I. STATEMENT OF THE FACTS AND PROCEDURAL HISTORY

This case arises out of an automobile accident that occurred on November 14, 1992, in Broward County, Florida, in which Rita Strochak sustained serious injuries when she was struck by a phantom vehicle. At the time of the accident, Strochak was the named insured under a "Masterpiece" personal excess liability policy with FIC. Strochak filed suit against FIC seeking excess uninsured motorists benefits in the amount of $5,000,000 under the excess policy claiming entitlement under Florida Statute § 627.727(2) which requires insurers of excess policies to "make available as a part of the application for such policy" excess uninsured motorist coverage in an amount equal to the liability limits of the excess policy. The question presented in this case is the meaning of this phrase as it relates to automobiles registered or principally garaged in Florida notwithstanding the residence of the insured or the place where the insurance coverage was initially purchased.

In 1985, Appellant's husband Donald Strochak applied for a primary liability policy and an excess liability policy in New Jersey from Keevily, Spero-Whitelaw, Inc. ("Keevily"), a New York

policy." Fla.Stat.Ann. § 627.727(2) (West 1990).

independent insurance producer.  In filling out the application in New York, Donald Strochak indicated New Jersey as his main residence although he owned a house in Florida.  During this application process in New York, Donald Strochak executed a written rejection of excess uninsured motorists ("UM") coverage.  FIC issued the excess policy, number 1051832901-01, effective June 17, 1985.  This policy covered the two residences maintained by the Strochaks, a co-op in New Jersey, listed as the primary residence, and a house in Florida.  The policy also covered three vehicles, including the 1984 Lincoln which was involved in the accident.  No vehicle was registered or principally garaged in Florida at the time the excess policy was issued.  The 1984 Lincoln was registered in New York and principally garaged in New Jersey.

The 1984 Lincoln was originally owned by Turnpike Ford, a car dealership owned by Donald Strochak.[2]  Shortly after Donald Strochak's death, in October of 1987, Rita Strochak purchased the vehicle from the business and had it shipped to Florida.  In March of 1989, she registered the Lincoln in Florida.  At this time, Rita Strochak obtained a primary automobile liability policy from FIC for the Lincoln, listing Delray Beach, Florida as her address.  This primary policy was issued and delivered in Florida.

For the 1989 renewal of the excess policy, FIC mailed a Masterpiece policy addressed to Donald Strochak to the New Jersey residence along with a letter explaining the newly created

---

[2]The 1984 Lincoln was covered by a policy held by Turnpike Ford in addition to being covered under Donald Strochak's FIC personal excess policy until the time of Donald Strochak's demise.

Masterpiece program, although Donald Strochak had been deceased for eighteen months. The Masterpiece program, according to Patricia Harris, FIC's underwriting representative, was the result of marketing changes for FIC's 1989-1990 renewals. All policies held by an insured which existed at the time that the Masterpiece program was introduced were renewed into policies called "Masterpiece." No new applications were required to renew existing policies into a Masterpiece. The Masterpiece policy sent to Donald Strochak in 1989, number 1051832-01, replaced all excess policies held by Donald Strochak, except for two exceptions not relevant to this case. The 1989 Masterpiece policy did not specifically identify any vehicle for coverage, but, by its terms, covered all vehicles unless specifically excluded, regardless of whether a separate premium was paid for the vehicles.[3] No premium was paid for any vehicle from 1989 to 1990. In March of 1990, the Masterpiece policy was amended to list Rita Strochak as the named insured and to list the mailing address as Delray Beach, Florida.

On June 17, 1990, the Lincoln, which was now registered and principally garaged in Florida, was added to the Masterpiece policy. This was accomplished through Keevily who notified FIC of the addition of the Lincoln. Strochak began paying a separate premium for the Lincoln in 1991. In April of 1992, Rita Strochak asked Edmond Frankel, her son, to notify FIC of a change in her mailing address from Florida back to New Jersey. Frankel called

---

[3]Rita Strochak contends that the Lincoln was not covered at this time as it was not listed specifically in the policy. Thus, she argues that there was a gap in vehicle coverage under the Masterpiece policy from 1989 to 1990.

Keevily who in turn notified FIC of this change.  Rita Strochak returned to New Jersey at this time with the Lincoln.

Effective June 17, 1992, the Masterpiece was renewed, listing the 1984 Lincoln as garaged in Florida.  This policy was in effect at the time of the November 1992 accident.

In granting summary judgment in favor of FIC, the district court assumed, without deciding, that Florida law applied.  The court then determined that FIC had complied with Florida law based on Donald Strochak's written rejection of excess UM coverage in 1985 in New Jersey.  The court further found that the excess policy was continuously renewed from 1985 through the date of the accident without a lapse in coverage.

We must first determine if the district court was correct in applying Florida law.  We review conflicts of law issues *de novo.* *Trumpet Vine Investments v. Union Capital Partners, Inc.,* 92 F.3d 1110, 1115 (11th Cir.1996).  In determining which law applies, a federal court sitting in diversity must apply the choice of law rules of the forum state.  *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021-22, 85 L.Ed. 1477 (1941).  Under Florida choice of law rules, a contract for automobile insurance generally is interpreted according to the law of the state where the contract was made.  *Sturiano v. Brooks,* 523 So.2d 1126, 1129 (Fla.1988).  However in specifically applying § 627.727 Florida law applies.  *Amarnick v. Automobile Ins. Co. of Hartford,* 643 So.2d 1130 (Fla.3d DCA 1994).  In *Sturiano* the court primarily addressed the question of whether interspousal immunity barred a wife's claim under an automobile insurance policy when she

was the passenger and her husband was the negligent driver of a vehicle. The court held that although the doctrine of interspousal immunity is waived in Florida to the extent of applicable liability insurance, the law of New York, the place where the contract in *Sturiano* was executed, would apply. The court noted that the insurance company did not know of the insured's move or connection to Florida, and when parties "come to terms in an agreement, they do so with the implied acknowledgment that the laws of that jurisdiction will control absent some provision to the contrary." *Sturiano,* 523 So.2d at 1129. In *Amarnick,* however, Florida's uninsured motorist statute § 627.727 was directly implicated. In that case, the court reasoned that the purpose of § 627.727 was to protect " "persons who are insured under a policy covering a motor vehicle registered or principally garaged in Florida and who are impaired or damaged in Florida by motorists who are uninsured or underinsured and cannot thereby make whole the impaired party.' " *Amarnick,* 643 So.2d at 1131 (*quoting Decker v. Great American Ins. Co.,* 392 So.2d 965, 968 (Fla.2d DCA 1980), *rev. denied,* 399 So.2d 1143 (Fla.1981)). The vehicle in *Amarnick* was principally garaged in Florida, and notwithstanding that the policy was delivered in New York, the court held that Florida law applied and the insurer was required to provide the uninsured motorist coverage mandated by § 627.727. *Amarnick,* 643 So.2d at 1132. The court reasoned that since the insurer knew that the vehicle was principally garaged in Florida, the policy was written to cover risks occurring in Florida. Thus, the court construed the policy as "issued for delivery" in Florida and subject to the requirements of Florida,

and not New York, law. *Id.* Likewise, in this case, FIC was aware that the 1984 Lincoln was principally garaged in Florida as evidenced by the Coverage Summary of the 1992 Masterpiece policy which listed Delray Beach, Florida, as the garage location. Thus, this case appears to be controlled by *Amarnick* and Florida law applies.[4]

On appeal, Strochak argues that Florida Statute § 627.727(2) applies because Florida acquired an interest in 1990 when the Lincoln became "registered or principally garaged" in Florida and was added to the 1990 Masterpiece policy. Strochak contends that this 1990 Masterpiece policy was the first excess policy which provided any motor vehicle liability coverage for a vehicle registered or principally garaged in Florida. In response, FIC argues that it complied with Florida law when, in 1985, it offered UM coverage to Donald Strochak, who executed a written rejection of the offer.

There is no case law directly addressing this issue. "Where there is any doubt as to the application of state law, a federal court should certify the question to the state supreme court to avoid making unnecessary *Erie*[5] "guesses' and to offer the state court the opportunity to interpret or change existing law."—*Mosher v. Speedstar Div. of AMCA Intern., Inc.,* 52 F.3d 913, 916-17 (11th Cir.1995) (*citing Jackson v. Johns-Manville Sales Corp.,* 781 F.2d

---

[4]*Amarnick* is the only appellate opinion on this question in Florida, and this issue is certainly within the purview of this case should the Florida Supreme Court decide to address it further.

[5]*Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

394, 396 (5th Cir.) *cert. denied,* 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986)). Thus we certify the following question to the Florida Supreme Court.

IV. QUESTION TO BE CERTIFIED TO THE FLORIDA SUPREME COURT

(1) WHETHER AN EXCESS CARRIER HAS A DUTY TO MAKE AVAILABLE THE UNINSURED MOTORISTS COVERAGE REQUIRED BY FLORIDA STATUTE § 627.727(2) TO AN INSURED UNDER AN EXISTING POLICY ON VEHICLES WHICH HAD NEVER BEEN REGISTERED OR PRINCIPALLY GARAGED IN FLORIDA WHENEVER ANY VEHICLE, COVERED OR SUBSEQUENTLY ADDED, FIRST BECOMES REGISTERED OR PRINCIPALLY GARAGED IN FLORIDA.

Our particular phrasing of the question is not intended to limit the Florida Supreme Court's inquiry. The entire record in this case, together with copies of the briefs, shall be transmitted to the Supreme Court of Florida.

QUESTION CERTIFIED.