WAUSAU UNDERWRITERS IN-
SURANCE COMPANY, Plain-
tiff/Counter–Defendant,

v.

J.S. BAILLIE, Jr., as personal represen-
tative of the Estate of Shirley Larue
Stevens, deceased, Defendant/Coun-
ter–Plaintiff,

No. 8:01–CV–720–T–TGW.

United States District Court,
M.D. Florida,
Tampa Division.

Dec. 27, 2002.

Chris Nick Kolos, Holland & Knight, LLP, Orlando, FL, David C. Borucke, Holland & Knight, LLP, Tampa, FL, for plaintiff.

Sam G. Caras, Law Office of Sam G. Caras, Dayton, OH, Paul A. Gelep, Law Office of Paul A. Gelep, New Port Richey, FL, for defendant.

## ORDER

THOMAS G. WILSON, United States Magistrate Judge.

In this insurance coverage dispute, the parties have filed cross-motions for summary judgment seeking a determination of whether the Estate of Shirley Stevens is entitled to recover uninsured motorist ("UM") benefits under two business automobile insurance policies issued by the plaintiff to Roberds Corporation, Stevens' former employer, in which only Roberds is specifically named as an insured. The dispute turns on the choice of law: Under Ohio law, Stevens would be deemed a named insured and thus eligible to recover UM benefits, while under Florida law she would not. As explained below, Florida law is appropriately applied under the circumstances of this case. Because under Florida law the Estate is not entitled to recover UM benefits under either automobile policy, summary judgment will be entered in favor of the plaintiff.

### I.

On October 23, 1999, Shirley Stevens was killed when a car driven by Mary

Potter crashed virtually head-on into Stevens' car on U.S. Highway 301 in Hillsborough County, Florida. At the time of the accident, Stevens was driving her car from her home in Wimauma, Florida, to Roberds, a furniture store in Hillsborough County, where she was employed as a human resources clerk. Potter caused the accident. However, Potter carried no liability insurance (Doc. 29, Comp.Ex. A2). Consequently, the Estate made a claim on Stevens' automobile policy, which provided UM protection, and the Estate was paid $25,000, the full amount of her UM coverage (*id.*).

The Estate also sought as a result of this fatal accident UM benefits from Wausau Underwriters Insurance Company under a business automobile insurance policy it issued to Roberds (*see* Doc. 29, Ex. A4, Tabs 1–5, policy number 0220–03–080755 ("the 03 policy")). Roberds, a defunct chain of furniture stores that conducted business in several states, including Florida, maintained UM automobile insurance for vehicles that it operated in Florida, Georgia and Ohio. The insurance policy was brokered by Acordia of Ohio, Inc., and delivered in Ohio, where Roberds was headquartered. The policy was in effect at the time of Stevens' accident.

The 03 policy provided, among other things, liability coverage, comprehensive and collision coverage, and UM protection (*see id.* at Tabs 2–5). However, because the automobile insurance laws varied among the states, the breadth of coverage and other policy provisions depended upon the state in which the automobile was licensed or garaged. For example, the policy contained separate statutory endorse-

ments for Ohio, Georgia and Florida, which set forth requirements applicable only to insured automobiles licensed or garaged in those states (*id.* at Tab 3, Docs. CA 01 05 12 98, CA 01 09 10 97, CA 01 28 05 94).

Similarly, the policy contained separate UM coverage endorsements for covered automobiles licensed or garaged in the states of Georgia, Ohio and Florida (*id.* at Docs. CA 21 11 10 97, CA 21 33 03 98; *id.* at Tab A5, Doc. CA 21 72 10 97). The Florida Uninsured Motorists Coverage endorsement is pertinent here because Stevens, a Florida resident, garaged her car at her home in Wimauma, Florida.

The Florida Uninsured Motorists Coverage endorsement provided up to one million dollars to an "insured" that was legally entitled to recover compensatory damages from the owner or driver of an "uninsured motor vehicle" (*see id.* at Tab 2, Doc. WA0021; *id.* at Tab 5, Doc. CA 21 72 10 97).[1] The Florida Uninsured Motorists Coverage endorsement defines an "insured" as follows (*id.* at Tab 5, Doc. CA 21 72 10 97, pp. 1–2):

### WHO IS AN INSURED

1. You.

2. If you are an individual, any "family member."

3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto . . . ."

4. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured."

1. The Florida Uninsured Motorists Coverage–Nonstacked (*id.* at Tab 5, Doc. CA 21 72 10 97) endorsement appears to have been the operative version at the time of the accident. Although the policy originally contained a Florida Uninsured Motorists Coverage–Stacked endorsement (*id.* at Tab 4, Doc. CA

21 47 10 97), the Florida Department of Insurance found that the stacked policy was issued in error (*id.* at Tab 5). Consequently, it was cancelled and replaced by the unstacked policy, retroactive to March 31, 1999 (*id.* at Tab 5, Doc. IC9999).

A "covered auto" is defined as "the private passenger 'autos' you own" (*id.* at Tab 2, Doc. CA 00 03 01 87; *id.* at Tab 3, Doc. CA 00 01 07 97, p. 1). "You" is defined in the policy as the "Named Insured" (*id.* at Tab 3, Doc. CA 00 01 07 97, p. 1). The policy lists "Roberds, Inc." as the named insured (*see id.* at Tab 2, CA 00 03 01 87).

The Estate filed a claim with Wausau asserting that Stevens was a beneficiary under the 03 policy and, therefore, that her Estate was entitled to UM benefits. Wausau disagreed, and filed this action seeking a declaration of its obligations to the Estate under the 03 policy as a result of Stevens' fatal automobile collision (Doc. 1). The Estate answered the complaint and asserted a counterclaim.

After discovery, the Estate filed an amended answer and counterclaim seeking, among other things, a declaration that it is also entitled to recover UM benefits under another business automobile insurance policy (policy number 0220–02–080755 ("the 02 policy")), and two commercial general liability ("CGL") policies issued by Wausau to Roberds (Doc. 24, ¶¶ 6, 34). Wausau responded with an answer and a "counterclaim" in which it denied liability under these policies, asserting that they did not even provide Florida UM coverage.

The parties subsequently filed cross-motions for summary judgment regarding Wausau's obligations to the Estate under each of these policies (Docs. 28, 30, 32). Wausau argues that, because Stevens was not a named insured and she was not occupying a company automobile or acting within the scope of her employment at the time of the accident, Florida law holds that the Estate is not entitled to UM benefits under either business automobile insurance policy (Doc. 30, p. 6; Doc. 32, pp. 3–4). Wausau further contends that there is no basis for recovery under the 02 policy or either CGL policy because those policies do not provide Florida UM coverage (Doc. 30, pp. 3, 7).

The Estate, in response, acknowledged that there is no basis for recovery under the CGL policies and, accordingly, no longer seeks benefits under either CGL policy (Doc. 37, p. 7).[2] On the other hand, it maintains that there is liability under the 02 and 03 automobile insurance policies (Docs. 28, 36, 37). In this connection, the Estate argues that, Ohio, not Florida, law governs this dispute because the insurance contract was issued in Ohio, and it seeks partial summary judgment on the ground that Stevens' status as an employee renders her an insured under Ohio law (Docs. 28, 36). The Estate further argues that, although the 02 policy does not contain a Florida UM provision, coverage should be implied by operation of law because Wausau failed to produce documentation showing that Roberds rejected Florida UM coverage for the pertinent time period (Doc. 37).

The parties subsequently consented to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 44). Thereafter, oral argument was held on the motions for summary judgment (Doc. 49).

## II.

The court shall enter summary judgment only if the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R.Civ.P. 56(c). Material facts are those over which disputes "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Disputes about material facts are genuine "if the evidence is such that a

---

**2.** The CGL policies expressly excluded bodily injury claims that arise out of the use of an automobile (*see* Doc. 30, Ex. B, Doc. CG 00 01 01 96, ¶ 2g).

reasonable jury could return a verdict for the nonmoving party." *Id.* The movant bears the burden of establishing the absence of a dispute over material facts. *Reynolds v. Bridgestone/Firestone, Inc.,* 989 F.2d 465, 469 (11th Cir.1993).

When the party opposing the summary judgment motion has the burden of proof at trial, the moving party may discharge its initial burden by identifying specific portions of the record which show the absence of evidence to prove the nonmoving party's case at trial, or, alternatively, it may come forward with "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1437–38 (11th Cir.1991). If the moving party does not meet its burden, then the motion for summary judgment will be denied. *Id.*

When the moving party meets its initial burden, the burden then shifts "to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). If the party opposing the motion is unable to make a sufficient showing on an element essential to its case on which it has the burden of proof at trial, the movant is entitled to summary judgment. *United States v. Four Parcels of Real Property, supra,* 941 F.2d at 1438.

When the party moving for summary judgment has the burden of proof at trial, it must affirmatively show the absence of a genuine issue of material fact by present-

ing credible evidence that would entitle it to a directed verdict if the evidence was not controverted at trial. *Id.* If the moving party does not meet its burden, then the motion for summary judgment will be denied. *Id.* at 1437–38. If the movant meets its initial burden, then it is entitled to summary judgment unless the nonmoving party comes forward with "significant probative evidence demonstrating the existence of a triable issue of fact." *Id.* at 1438.

In determining whether the moving party should be awarded summary judgment, the court must view the evidence and factual inferences therefrom in the light most favorable to the opposing party. *Reynolds v. Bridgestone/Firestone, Inc., supra,* 989 F.2d at 469. Any reasonable doubts about the facts are to be resolved in favor of the party opposing the motion for summary judgment. *Id.*

### III.

The 03 policy is the one intended to cover Roberds' automobiles, as distinct from its trucks (Doc. 31, p. 2). Moreover, it is the only one that has express Florida UM coverage. Consequently, that policy will be addressed first.

■ The parties primarily dispute in their summary judgment motions whether Stevens is a "named insured" under the Florida UM endorsement.[3] Central to this dispute is the Ohio Supreme Court's holding in *Scott–Pontzer v. Liberty Mutual Fire Ins. Co.,* 85 Ohio St.3d 660, 710 N.E.2d 1116 (Ohio 1999).[4] Under *Scott–*

---

**3.** Thus, as indicated, the endorsement lists "you" as an insured, and "you" is defined as the "named insured" (*see supra,* p. 1309). It also lists as insureds those driving a "covered auto." A "covered auto" is a vehicle owned by the "named insured."

**4.** The Ohio legislature overruled *Scott–Pontzer* in an emergency session, noting that it effected this, and other emergency insurance mea-

sures, "to ensure a stable market and reasonable rates for automobile insurance coverage offered to the residents of [Ohio] and to protect the financial stability of the automobile insurers providing that coverage" (Doc. 39, Ex. N). This action, however, does not affect the application of *Scott–Pontzer* to claims for policies issued prior to October 29, 2001 (*id.* at p. 12).

*Pontzer*, an insurance policy which lists only the corporation as the "named insured," as it does in this case, will be construed to include the corporation's employees as insureds for UM coverage, regardless of whether they are driving a company automobile or acting within the scope of employment at the time of the accident, unless the policy affirmatively states otherwise. Thus, under Ohio law, Stevens would be considered a "named insured" driving a "covered auto" by virtue of her status as a Roberds' employee at the time of the accident.

■ In contrast, under Florida law, an employee is not considered a named insured where the plain language of the policy lists only the corporation as the insured. *Travelers Ins. Co. v. Bartoszewicz*, 404 So.2d 1053, 1054 (Fla.1981); *Auto–Owners Ins. Co. v. Brockman*, 524 So.2d 490, 493 (Fla.App.1988); *Pearcy v. Travelers Indem. Co.*, 429 So.2d 1298, 1298–99 (Fla.App.1983).[5] Consequently, in these circumstances, Florida law would compel the conclusion that Stevens is not a "named insured" and her car is not a "covered auto."

Wausau acknowledged during oral argument that, if Ohio law applies, coverage is established under *Scott–Pontzer*. Conversely, the Estate conceded at the hearing that under Florida law the claim for UM benefits would not prevail. Consequently, the crux of this case is whether the governing law is to be supplied by Ohio or Florida.

■ Since this is a diversity action, the substantive law of the forum state, including its conflict of law rules, is to be applied. *Shapiro v. Associated Intern. Ins.*

*Co.*, 899 F.2d 1116, 1118 (11th Cir.1990). In *Shapiro*, the Eleventh Circuit explained in an insurance case that, "as a preliminary matter, we must determine which state's substantive law the Florida Supreme Court would choose to govern interpretation of the...policy, as we are 'bound to decide the case the way it appears the state's highest court would.' " *Id.* (citation omitted).

Traditionally, when confronted with questions regarding the interpretation of a contract, Florida courts have applied the *lex loci contractus* rule, which directs that the law of the state where the contract was made governs. *Id.* at 1119. Accordingly, the Estate argues that, under the traditional choice of law rule in Florida, the substantive law of Ohio applies in this case because the contract was negotiated in Ohio (Doc. 28, pp. 3–4).

■ However, Wausau points out that there are circumstances where the Florida courts have held that the strict application of *lex loci contractus* is not appropriate. *See, e.g., Gillen v. United Services Auto., Ass'n*, 300 So.2d 3, 7 (Fla.1974); *Amarnick v. Automobile Ins. Co. of Hartford, Connecticut*, 643 So.2d 1130 (Fla.App.1994); *Safeco Ins. Co. of America v. Ware*, 424 So.2d 907 (Fla.App.1982); *Decker v. Great American Ins. Co.*, 392 So.2d 965 (Fla. App.1980). Wausau contends that the *lex loci contractus* rule and, concomitantly, the application of Ohio law, is not appropriate in this case because the Estate's recovery is premised upon a Florida UM endorsement drafted to conform with Florida law (Doc. 39). Accordingly, it asserts that the law of Florida, the state where the

---

5. In this connection, the Florida Supreme Court held that, "[i]t is not unreasonable that the parties would declare the corporation the named insured without necessarily meaning to include the employees." *Travelers Ins. Co. v. Bartoszewicz, supra*, 404 So.2d at 1055.

Thus, "[i]t is obvious that benefits are conferred by naming the corporation alone, because anyone (including an employee) who is injured while occupying a corporation car or who is struck by a corporation car ... will be insured." *Id.*

insured risk was located, should govern (*id.*).

Wausau's contention that Florida law should be used to interpret a policy provision based upon a Florida statute is persuasive. Thus, as indicated, at the time of the accident, Stevens, a Florida resident, was driving her car which she regularly garaged at her Florida home (Doc. 32, Ex. B). Therefore, the Estate seeks to recover under the Florida UM endorsement since that provision applies to covered autos principally garaged in Florida (Doc. 28, pp. 9–12).[6] Because the Estate premises its right to recovery on a Florida UM endorsement drafted to comply with a Florida statute, the conclusion that Florida law should govern its interpretation not only makes sense, but appears to be directed by a controlling Florida appellate decision. *Amarnick v. Automobile Ins. Co. of Hartford, Connecticut, supra.*

*Amarnick* concerned a claim for Florida UM coverage based upon an automobile accident in Florida involving a vehicle garaged in this state after having been moved here from New York. The insurance company was informed of the move and transferred coverage to a Florida policy. The policy, however, had been delivered to the plaintiff in New York. Consequently, under a strict application of *lex loci contractus*, the law of New York would apply. Nevertheless, the Florida appellate court, citing earlier authority concerning constructive delivery, considered the policy to have been issued for delivery in Florida and thus within the Florida UM statutory provision mandating UM coverage for policies delivered, or issued for delivery, in Florida. *Amarnick v. Automobile Ins. Co. of Hartford, Connecticut, supra,* 643 So.2d at 1131–32.

Significantly, *Amarnick* was decided after the Florida Supreme Court reaffirmed in *Sturiano v. Brooks,* 523 So.2d 1126 (Fla. 1988), the application of the rule of *lex loci contractus.* See also *Lumbermens Mut. Cas. Co. v. August,* 530 So.2d 293 (Fla. 1988). Thus, *Amarnick* is properly viewed not as contrary to the principle of *lex loci contractus,* but as a corollary of it. In this respect, *Amarnick* did not rely upon a notion of a significant relationship to Florida, but rather upon constructive delivery in Florida. *Amarnick v. Automobile Ins. Co. of Hartford, Connecticut, supra,* 643 So.2d at 1132, *citing Aperm of Florida v. Trans–Coastal Maintenance Co.,* 505 So.2d 459 (Fla.App.1987), *rev. den.* 515 So.2d 229 (Fla.1987), as well as *East Coast Ins. Co. v. Cooper,* 415 So.2d 1323 (Fla. App.1982). Consequently, with regard to a Florida UM provision required by the Florida statute (§ 627.727(1), Fla. Stat.) for a vehicle principally garaged in Florida, *Amarnick* indicates that, for the purpose of *lex loci contractus,* the insurance contract is deemed to have been delivered in Florida.

Furthermore, *Amarnick* is fully consistent with the Florida Supreme Court's fundamental rationale in *Sturiano.* The court in *Sturiano* retained the doctrine of *lex loci contractus,* at least with respect to automobile insurance contracts, because it "ensure[d] stability in contractual arrangements" by permitting the parties to know what state's laws would control the contract. *Sturiano v. Brooks, supra,* 523 So.2d at 1129–30. That principle also supports the conclusion that a Florida UM provision required by Florida statute should be governed by Florida law, since that is plainly what the parties to the contract expect. Indeed, the application of

---

**6.** The Estate also supports its arguments with deposition testimony concerning the Florida UM endorsement (Doc. 36, pp. 12–13). Notably, the Estate does not make any argument that the Ohio UM endorsement applies. Moreover, it did not adduce any evidence that would support such a contention.

Ohio law to the Florida UM endorsement is contrary to the reasoning upon which *Sturiano* is based.

■ Accordingly, the Eleventh Circuit in *Strochak v. Federal Ins. Co.*, 109 F.3d 717, 719–20 (11th Cir.1997), *answer to certified question conformed to* 138 F.3d 1338 (11th Cir.1998), stated the law in this area as follows:

> Under Florida choice of law rules, a contract for automobile insurance generally is interpreted according to the law of the state where the contract was made. *Sturiano v. Brooks*, 523 So.2d 1126, 1129 (Fla.1988). However in specifically applying § 627.727 [Florida uninsured motorist statute] Florida law applies. *Amarnick v. Automobile Ins. Co. of Hartford*, 643 So.2d 1130 (Fla. 3d DCA 1994).

This court, moreover, is bound to follow the decision of the Florida district court of appeal in *Amarnick* since there is no persuasive indication that the Florida Supreme Court would decide the issue differently. *McMahan v. Toto*, 311 F.3d 1077, 1080 (11th Cir.2002).

■ The conclusion that Florida law should control the interpretation of the Florida UM endorsement is confirmed by an examination of the documents in the packet of materials delivered to Roberds. Contrary to the Estate's assertion, there is not one basic business auto coverage form that applies in both Ohio and Florida and to which the Florida UM endorsement is appended. Rather, as shown by form WA0035 (Multistate Forms/Endorsements Schedule), there are two distinct business auto coverage forms, one which applies to certain states, including Ohio (form CA 00 01 02 95), and another which applies to other states, including Florida (form CA 00 01 07 97) (Doc. 29, Ex. A4, Tab 3). While much of the language in the two forms is the same, there are notable differences (*compare* form CA 00 01 07 97 *with*

form CA 00 01 02 95, § II A1b(5); § II A 2a(2), (4); § II B4b; § III B4b; § IV A2; § V E, H, N). Because there is a distinct form for the basic business auto coverage that is applicable to Florida, it is appropriate to consider that form, in accordance with *Amarnick*, to have been issued for delivery in Florida. The principle of *lex loci contractus* does not provide a sufficient reason for construing the Florida form under Ohio law.

The policy also includes other Florida endorsements besides the UM coverage. Thus, there is a Florida amendatory endorsement that requires mediation of certain claims (Doc. 29, Ex. A4, Tab 3, form CA 01 28 05 94). Even more significant, there is an endorsement for Florida Personal Injury Protection as required by the Florida Motor Vehicle No–Fault Law (*id.* at Tab 4, form 22 10 01 99). It is patently irrational to construe these Florida endorsements under Ohio law simply because the policy was given to Roberds in Ohio.

In sum, the materials provided to Roberds essentially contained a Florida policy. That policy is properly considered to have been issued for delivery in Florida and therefore should be interpreted in accordance with Florida law. *Amarnick v. Automobile Ins. Co. of Hartford, Connecticut, supra*, 643 So.2d at 1132; *Aperm of Florida, Inc. v. Trans–Coastal Maintenance Co., supra*, 505 So.2d at 461–62. In all events, *Amarnick* established, as the Eleventh Circuit recognized in *Strochak v. Federal Ins. Co., supra*, 109 F.3d at 719–20, that "in specifically applying § 627.727 Florida law applies." The holding in *Amarnick* is enough to resolve the choice of law issue in this case.

The Estate argues that the application of Ohio law is appropriate because the definition of "insured" requires reference to a policy form outside the Florida UM endorsement (Doc. 28, p. 10; Doc. 36, pp.

12–13). Thus, the Florida UM endorsement, defines an "insured" as "you" (Doc. 29, Ex. A4, Tab 5, Doc. CA 21 72 10 97). The Estate contends that, in order to determine the meaning of "you," reference must be made to the basic business auto coverage form in the policy, which defines "you" as the "named insured" (*id.* at Tab 3, Doc. CA 00 01 07 97). The Estate argues, therefore, that the term "named insured" should be interpreted consistent with Ohio law. This argument is flawed because, as previously explained, there is not one basic business auto coverage form. Rather, there is one form that applies in Ohio, and a different form that applies in Florida. Although the language regarding the definition of "you" is the same in both forms, the Florida UM endorsement obviously refers back to the business auto coverage form that applies in Florida. Under these circumstances, it would be illogical to look to Ohio law for a definition of "named insured," particularly since the definition in Ohio is not only unusual, but contrary to the law of Florida. In any event, for the reasons stated earlier, a Florida court would not do so.

The Estate asserts other arguments in its summary judgment memoranda in support of its contention that Stevens was a named insured under the policies. These contentions were abandoned when the Estate conceded during oral argument that, if Florida law defines the pertinent terms of the 03 policy, it loses. In any event, the arguments are meritless.

■ The Estate has argued that excluding Stevens as a policy beneficiary is contrary to the policy language, which purportedly reflects an intent to treat equally all employees regardless of residency (Doc.

36, pp. 1–2; 13–14). However, as Wausau points out, there are significant differences in the policy benefits and requirements depending upon the state in which the car is located and, therefore, the insurance policy does not uniformly apply to all employees. Furthermore, with regard to the UM provisions, the plain language of the policy does not reflect an intent to provide free personal UM insurance to Roberds' employees.

■ The Estate also contends that Stevens is a policy beneficiary under the "drive other car" provision of the "Wausau Coverage Enhancement" (Doc. 36, pp. 14–18). Although this provision does broaden policy coverage, Stevens is not an intended beneficiary under this endorsement. Thus, the "drive other car" provision provides additional insurance coverage for individuals named in a schedule (Doc. 29, Ex. A4, Tab 5, Doc. WA8443, p. 1, ¶ IC). However, the record does not contain any schedule and there is no evidence that Roberds intended to include Stevens on such a schedule.

In this connection, Nels Jacobson, an underwriter for Wausau, stated in an affidavit that, although Wausau requested the names of individuals to be placed on the schedule, no list was forthcoming, and, in order to get the policy issued, Acordia, the policy broker, suggested the term "on file with the company" until the names were provided (Doc. 33, ¶ 5). However, no names were ever submitted (*id.*). Therefore, there is no schedule of names. In any event, there is no evidence that Roberds intended to include Stevens on such a schedule. To the contrary, Jacobson explained that it is standard in the industry to provide this additional insurance for owners or other high ranking officials of a company (*id.*).[7] As a human resources

---

7. The Estate filed a Motion to Strike the Affidavits of Nels Jacobson/Alternate Motion for Additional Discovery because it did not have an opportunity to depose Jacobson (Doc. 38, p. 4). The motion was denied as procedurally

defective and never renewed. Nonetheless, I was willing to defer consideration of the summary judgment motions in order to permit the Estate to depose Jacobson; however, counsel

clerk, Stevens would not qualify. Jacobson further elaborated that he has never known Wausau to issue "drive other car" coverage for all of a company's employees, as that could entail hundreds of persons (*id.* at ¶ 6). Therefore, there is no evidence that Stevens was an intended beneficiary under this provision. Consequently, a factfinder could not reasonably conclude that Stevens was covered under this policy provision.[8]

■ The Estate also refers to the "Employees as Insureds" provision of the Wausau Coverage Enhancement endorsement in support of its claim (Doc. 36, pp. 14, 17). That provision states that "[a]ny employee of yours is an 'insured' while using in your business or your personal affairs a covered 'auto' you don't own, hire or borrow" (Doc. 29, Ex. A4, Tab 5, Doc. WA8443, p. 4, ¶ IV). This provision protects employees acting within the scope of their employment while using a vehicle not owned by Roberds.[9] Since Stevens was not acting within the course or scope of her employment at the time of her accident, she is not a beneficiary under this policy provision.[10]

Consequently, the conclusion remains that Florida law should determine the scope of coverage of the Florida UM endorsement. As indicated, Florida law dictates that Stevens is not insured under these circumstances. Accordingly, Wausau is entitled to judgment as a matter of law with respect to the Estate's claim under the 03 policy.

## IV.

The Estate's claim under the 02 policy is even weaker than its claim under the 03 policy. Thus, the claim is defeated by the same reasons that defeat the 03 claim. Moreover, Wausau demonstrates an additional compelling ground for rejecting the 02 claim.

■ Wausau argues that there is no basis for the Estate to recover UM benefits for Stevens' injuries under the 02 policy because it does not provide Florida UM coverage (Doc. 30, pp. 3–5; Doc. 39, pp. 13–14). Thus, when Roberds was initially offered Florida UM coverage for the 02 policy for the 1998–1999 policy term, it declined such coverage (Doc. 30, Ex. F). This was because the 02 policy was designed to cover Roberds' commercial trucks and UM coverage was not desired

---

for the Estate represented during oral argument that it was not necessary to depose Jacobson in order to respond adequately to Wausau's motions for summary judgment. *See* Rule 56(f), Fed.R.Civ.P. Moreover, he has subsequently pressed for a ruling on the pending motions.

8. The Estate seemingly argues that the failure to provide the schedule called for a presumption that there was a schedule that included Stevens (Doc. 36, pp. 15–16). In light of the evidence that no schedule was ever drafted and that Stevens was not an intended beneficiary, such a presumption is unwarranted.

9. The terms "you" and "your" in this provision cannot reasonably be interpreted to include not only the corporation, but the corporation's employees. The phrase "any employee of yours" does not make sense if

"yours" means Roberds' employees. Furthermore, such an interpretation would exclude Stevens as a beneficiary. Thus, the provision affords coverage when using an auto "you don't own," and, if, as the Estate argues, "you" means the employee, then Stevens' car would not be covered.

10. *See Southern Life & Health Ins. Co. v. Smith,* 218 So.2d 784, 786 (Fla.App.1969) ("the mere going to or from work in one's own car is not in the course of employment"); *see also* Doc. 32, Ex. C (defense counsel acknowledging that "scope and course of employment, as a matter of law, generally does not include travel to and from work"). The Estate, furthermore, makes no cogent argument in its summary judgment memoranda that Stevens was acting within the scope or course of her employment at the time of the accident.

for those vehicles (Doc. 31, p. 2). By operation of Florida law, the initial rejection extended to the renewal of the policy because Wausau did not receive a written request from Roberds to change its coverage (*id.* at pp. 2–3; Fla. Stat. § 627.727(1)). Accordingly, no Florida UM coverage was included in the 02 policy for the 1999–2000 term (Doc. 31, pp. 2–3).

The Estate argues that it should not be presumed that Roberds rejected UM coverage for that time period because Wausau sent Roberds a Florida UM selection/rejection form for the 1999–2000 policy term that Wausau has been unable to locate (Doc. 37, pp. 5–6; *see also* Doc. 31, p. 3). Thus, it argues that this selection/rejection form, if located, may show that Wausau requested a change in its Florida UM coverage for the 02 policy. The Estate therefore contends that Wausau's failure to maintain this form was a "breach of its duty to conform and maintain the policy" and warrants the presumption that Roberds elected Florida UM coverage for the 02 policy (Doc. 37, p. 5).

The Estate's contention that Roberds requested Florida UM coverage for the 1999–2000 policy term is mere speculation. Thus, the record does not contain any evidence that Roberds sought to include such coverage in the 02 policy. To the contrary, the record indicates that there was no request to change the coverage (*see* Doc. 31, pp. 2–3).

Furthermore, the fact that Wausau was unable to locate this selection/rejection form does not warrant the presumption that Roberds selected Florida UM coverage for the 1999–2000 policy term. Thus, the "missing evidence" cases cited by the Estate in support of its contention that Florida UM coverage should be implied as a matter of law are inapposite. Specifically, there is no evidence that a signed Florida UM selection/rejection form for the 1999–2000 policy was ever

within Wausau's control. Thus, there is no evidence that the document was executed or returned to Wausau or Acordia, let alone misplaced, hidden or destroyed by one of these companies. Therefore, the presumption is unwarranted.

In sum, Wausau is also entitled to judgment as a matter of law regarding liability under the 02 policy because that policy did not provide Florida UM coverage. Moreover, even if it did, for the reasons stated with respect to the 03 policy, Florida law would determine the scope of the UM coverage, and, under Florida law, coverage would not extend to Stevens.

Therefore, it is upon consideration

ORDERED:

1. That Wausau's Motion for Summary Judgment on the Complaint (Doc. 32) be, and the same is hereby, **GRANTED**, and judgment shall be entered declaring that Wausau has no obligation to pay UM benefits to the Estate under the 03 policy.

2. That Wausau's Motion for Summary Judgment on its Counterclaim (Doc. 30) be, and the same is hereby, **GRANTED**, and judgment shall be entered dismissing the Estate's counterclaim and declaring that Wausau has no obligation to pay UM benefits to the Estate under the 02 policy.

3. That the Estate's Motion for Partial Summary Judgment (Doc. 28) be, and the same is hereby, **DENIED**.

4. That the Clerk is hereby directed to enter judgment for Wausau and **CLOSE** this **CASE**.