**Mercedes BEDOYA, as personal representative of the Estate of Wilder Bedoya, deceased, Plaintiff,**

v.

**TRAVELERS PROPERTY CASUALTY CO. OF AMERICA, Defendant.**

Case No. 8:10–cv–1530–T–26TGW.

United States District Court,
M.D. Florida,
Tampa Division.

March 22, 2011.

Garett Raines, Gene Odom, Maryann R. Masella, Martinez Odom Law Group, Brandon, FL, for Plaintiff.

Rory Eric Jurman, Yelena Shneyderman, Fowler White Burnett, PA, Ft. Lauderdale, FL, for Defendant.

## ORDER

RICHARD A. LAZZARA, District Judge.

**THIS CAUSE** comes before the Court on Defendant's Motion for Final Summary Judgment with incorporated memorandum of law and Statement of Undisputed Facts, and exhibits (Dkt. 22), Plaintiff's Response and Cross–Motion for Summary Judgment with incorporated memorandum of law and Statement of Undisputed Facts, and exhibits (Dkt. 26), and Defendant's Response (Dkt. 30).

This is an action for damages brought under Florida's Wrongful Death Act, section 768.16, *et seq.*, Florida Statutes, by Plaintiff Mercedes Bedoya, on behalf of the decedent Wilder Bedoya's three survivors. Plaintiff seeks uninsured motorist ("UM") coverage under an insurance policy issued by Defendant Travelers Property Casualty Company of America ("Travel-

ers"). Her complaint rests on arguments that Travelers did not have a validly executed written rejection of UM coverage and that Travelers violated Florida Statutes by refusing to offer UM coverage in Florida. Travelers filed a counterclaim for declaratory relief in order to obtain a determination that the subject policy does not require it to provide any UM benefits with respect to Plaintiff's wrongful death claims.

### Factual Background

On February 4, 2009, Wilder Bedoya was killed in Lee County, Florida, while operating a motor vehicle owned by his employer Psychotherapeutic Services, Inc. ("PSI"). The driver of another motor vehicle traveling in front of the decedent's vehicle ran over a brick paver, causing it to vault into the air, break through the windshield of the decedent's vehicle, and strike the decedent's head. Plaintiff seeks damages pursuant to Florida's Wrongful Death Act; however, in the same count, Plaintiff alleges that at the time of the accident, the decedent was insured under an auto insurance policy, policy number TJ–CAP–189K5191–TIL–09, issued by Defendant, Travelers Property Casualty Company ("Travelers"), a Connecticut corporation, to the decedent's employer.[1]

On October 10, 2007, Randall Cooper, the Chief Financial Officer of the insureds, PSI and Associated Service Specialists, Inc. ("ASI"), executed a UM selection/rejection form ("UM form") rejecting UM coverage. (*See* Dkt. 22, Ex. A, UM Form, dated October 10, 2007.) Both PSI and ASI were named as insureds on the original insurance policy. Mr. Cooper was authorized to make insurance decisions on behalf of both insureds. (Dkt. 22, Ex. E.) The UM form provided, in pertinent part:

---

1. The policy was issued in Maryland. However, the insured conducts business in Florida as well as in other states.

I understand and agree that selection of any of the above options applies to my liability policy and future renewals or replacements of such policy which are issued at the same Bodily Injury Liability limits, and if I decide to select another options at some future time, I must let the Company or my agent know in WRITING.

Following execution of the UM form, Travelers issued the subject policy, with effective dates of January 27, 2008, through January 27, 2009. (*See id.* at Ex. B, Excerpt from the 2008–2009 Policy.)

There is no dispute that the original 2008–2009 policy did not afford UM coverage to the insureds. However, on November 6, 2008, Mr. Cooper executed another UM form on behalf of the insured in connection with a renewal policy, number TJ–CAP–189K5191–TIL–09, covering the period from January 27, 2009, through January 27, 2010. (*See id.* at Ex. C, UM Form, dated November 6, 2008.) This UM form provided, in pertinent part, as follows:

Florida law requires that automobile liability policies include Uninsured Motorist coverage at limits equal to the Bodily Injury Liability limits in your policy unless you select a lower limit offered by the company or reject Uninsured Motorist coverage entirely. *If this is a renewal policy,* the coverage rejection or limits of your expiring policy will apply for the renewal policy unless you make a different selection below.

Mr. Cooper did not make any selection on this UM form. He simply signed the form, following the above instructions. The 2009–2010 renewal policy was the policy in effect at the time of the accident. (*See id.* at Ex. D, Excerpt from 2009–2010 Policy.) It is undisputed that Mr. Cooper intended to maintain the same coverage on the renewal policy as on the 2008–2009 policy, which did not contain UM coverage. (*See id.* at Ex. E, Cooper's Affidavit.) It is undisputed that in executing the form, Mr. Cooper intended to reject UM coverage. (*See id.*)

### *Summary Judgment Standard*

■ Summary judgment is appropriate where there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted). On a motion for summary judgment, the court must review the record, and all its inferences, in the light most favorable to the nonmoving party. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Summary judgment is particularly appropriate to resolve questions of insurance coverage, since the interpretation of a written contract is a matter of law to be determined by the court. *See Technical Coating Applicators, Inc. v. U.S. Fidelity and Guar., Co.,* 157 F.3d 843 (11th Cir. 1998); *DEC Electric, Inc. v. Raphael Construction Corp.,* 558 So.2d 427 (Fla.1990); *Jones v. Utica Mutual Ins. Co.,* 463 So.2d 1153 (Fla.1985). In this case, Travelers is entitled to summary judgment on the basis of the plain meaning and legal effect of its policy, which does not provide UM coverage for the subject loss. Travelers's Motion for Final Summary Judgment and response to Plaintiff's Cross–Motion for Summary Judgment are thorough and well-reasoned and, therefore, portions will be adopted and incorporated herein.

### *Discussion*

■ The Court has diversity jurisdiction over this case pursuant to 28 U.S.C. Section 1332. As Defendant asserts, Florida law controls the substantive coverage issues presented in this case. *See Technical*

*Coating Applicators, Inc. v. U.S. Fidelity and Guar. Co.*, 157 F.3d 843 (11th Cir. 1998); *Shapiro v. Associated Intern. Ins. Co.*, 899 F.2d 1116, 1118 (11th Cir.1990). In *Shapiro,* the Eleventh Circuit explained in an insurance case that, "as a preliminary matter, we must determine which state's substantive law the Florida Supreme Court would choose to govern the interpretation of the ... policy, as we are bound to decide the case the way it appears the state's highest court would." 899 F.2d at 1118. With regard to substantive law, Florida courts apply the *lex loci contractus* rule, which directs that the law of the state where the contract was made governs. *Id.* at 1119. However, there are exceptions to the application of the *lex loci contractus* rule, especially as it concerns auto policies. *See Amarnick v. Automobile Ins. Co. of Hartford, Connecticut,* 643 So.2d 1130 (Fla.Dist.Ct.App.1994) (finding that since a policy issued in New York was intended to cover vehicles which were principally garaged in Florida, it needed to comply with Florida law with regard to UM coverage); *Decker v. Great American Ins. Co.,* 392 So.2d 965 (Fla.Dist.Ct.App. 1980) (applying Florida law to a UM coverage case where the policy was delivered out of state because the UM statute was intended to protect persons who are injured under a policy covering an auto registered or principally garaged in Florida and who are damaged in Florida by motorists who are uninsured or under-insured).

In *Wausau Underwriters Ins. Co. v. Baillie,* 281 F.Supp.2d 1307 (M.D.Fla. 2002), the Honorable Thomas G. Wilson, Magistrate Judge for the Middle District of Florida, applied Florida law to interpret section 627.727, Florida Statutes, and determine whether UM coverage applied to a Florida resident who was driving a car principally garaged in Florida. The *Wausau* plaintiff relied upon a Florida UM endorsement drafted to conform to Florida law to argue that UM coverage applied.

The court found that "[b]ecause the Estate premises its right to recovery on a Florida UM endorsement drafted to comply with a Florida statute, the conclusion that Florida law should govern its interpretation not only makes sense, but appears to be directed by a controlling Florida appellate decision." *Wausau,* 281 F.Supp.2d at 1313 (quoting *Amarnick v. Automobile Ins. Co. of Hartford, Connecticut,* 643 So.2d 1130 (Fla.Dist.Ct.App.1994)). The court also noted the Eleventh Circuit Court of Appeal's holding that "[u]nder Florida choice of law rules, a contract for automobile insurance generally is interpreted according to the law of the state where the contract was made." *Wausau,* 281 F.Supp.2d at 1314. However, in specifically applying § 627.727 [Florida's uninsured motorist statute] Florida law applies. *Id.* (citing *Strochak v. Federal Ins. Co.,* 109 F.3d 717, 719–20 (11th Cir.1997)).

■ In light of the court's well-reasoned analysis in *Wausau,* this Court will apply Florida law in interpreting the subject policy to determine whether UM coverage is afforded for the subject loss. While the policy was not delivered in Florida, the decedent was a Florida resident and he was employed by PSI in Florida. The UM form upon which Plaintiff relies in support of coverage was drafted to comply with Florida law and the accident occurred in Florida. Accordingly, Florida law governs the determination of whether the subject policy affords UM coverage.

Section 627.727(1), Florida's UM statute, states in pertinent part, as follows:

... Unless an insured, ... having the privilege or rejecting uninsured motorist coverage, requests such coverage or requests higher uninsured motorist limits in writing, the coverage or such higher uninsured motorist limits need not be provided in or supplemental to any other policy which renews, extends, changes,

supersedes, or replaces an existing policy with the same bodily injury liability limits when an insured ... had rejected the coverage.... The rejection or selection of lower limits shall be made on a form approved by this office. The form shall fully advise the applicant of the nature of the coverage and shall state that the coverage is equal to bodily injury liability limits unless lower limits are requested or the coverage is rejected. The heading of the form shall be in 12–point bold type and shall state: "You are electing not to purchase certain valuable coverage which protects you and your family and you are purchasing uninsured motorist limits less than your bodily injury liability limits when you sign this form. Please read carefully." If this form is signed by a named insured, it will be conclusively presumed that there was an informed, knowing rejection of coverage or election of lower limits on behalf of all insureds. The insurer shall notify the named insured at least annually of her or his options as to the coverage required by this section....

This statute provides that UM coverage need not be included in any policy that "renews, extends, changes, supersedes, or replaces an existing policy with the same bodily injury liability limits" when the named insured has previously rejected the coverage or selected lower limits. Although Plaintiff would have this Court find otherwise, Florida courts have consistently applied this statutory language to find that a form rejecting UM in an initial insurance policy applies to renewal of, or changes to, the original policy. *See Bell v. Progressive Specialty Ins. Co.*, 744 So.2d 1165 (Fla. Dist.Ct.App.1999) (holding that a waiver of UM coverage applied to a replacement policy issued on the same terms by the insurer's sister company after the insurer discontinued coverage and, thus, the sister company was entitled to rely on a previous rejection and was not required to obtain a

new rejection); *Atlanta Cas. Co. v. Evans*, 668 So.2d 287 (Fla.Dist.Ct.App.1996) (finding that the insurer was not statutorily obligated to offer UM coverage to insured and to obtain written rejection from her before it could issue renewal policy without UM coverage, where insured's husband, who was also insured under policy, has signed rejection of UM coverage before the original policy was issued).

■■■ This statutory language is clear—once the insured has made his or her initial selection concerning UM coverage, that selection remains in effect even if that policy is renewed, extended, changed, superseded, or replaced, unless the insured requests a change, in writing, and pays the additional premium. Section 627.727 does not contemplate or require that the insurer obtain a new UM selection form every time a change is made to the policy. The insured's original UM selection form controls unless the insured requests a change. *Wausau*, 281 F.Supp.2d 1307 (holding that by operation of Florida law, initial rejection of [UM] coverage under business auto insurance policy extended to the renewal of the policy where insurer did not receive a written request from the insured to change its coverage); *see also Bell v. Progressive Specialty Ins. Co.*, 744 So.2d 1165 (Fla.Dist.Ct.App.1999) (concluding that a UM "waiver applies not only to the original insurance policy for which it was executed, but also to a replacement policy issued on the same terms by a different insurance company.") The statute also provides that if this form is signed by a named insured, it will be conclusively presumed that there was an informed, knowing rejection of coverage or election of lower limits on behalf of all insureds. Thus, the insured's written rejection constitutes a *prima facie* showing that UM coverage does not apply. *See Long v. Prudential Prop. & Cas. Ins.*, 707

So.2d 390, 391 (Fla.Dist.Ct.App.1998) (citation omitted). Further, the decision of a named insured rejecting UM coverage is binding on any additional insureds under the policy. *See Lancaster Oil Co., Inc. v. Hartford Accident & Indem. Co.*, 486 F.Supp. 399 (N.D.Fla.1980).

As Travelers asserts, it is undisputed that the CFO of the named insureds, PSI and ASI, executed a UM selection/rejection form dated October 10, 2007, in connection with the 2008–2009 policy, where he specifically rejected UM coverage. (*See* Dkt. 22, Ex. A, UM Form.) Above Mr. Cooper's signature, the form contained the following language:

> I understand and agree that selection of any of the above options applies to my liability policy and future renewals or replacements of such policy which are issued at the same Bodily Injury Liability limits, and if I decide to select another options at some future time, I must let the Company or my agent know in WRITING.

(*See id.*) This policy provided liability coverage of $1,000,000. It provided UM coverage for autos owned by the insured, pursuant to Endorsement CA TO 30. (Dkt. 22, Ex. B, p. B005.) The same endorsement lists the states where UM coverage was to be provided to the insureds. (*See id.* at B010.) Florida is not listed as one of the states where UM coverage was to be provided, therefore, UM coverage was not provided to the insureds for the policy period effective from January 27, 2008 though January 27, 2009. Mr. Cooper's rejection of UM limits is binding on the decedent because the decedent was an employee of PSI.

It is also undisputed that Mr. Cooper intended to reject UM coverage on the renewal policy, which was in effect at the time of the accident. (*See id.* at Ex. E.) The renewal policy is virtually identical to the prior policy, and contains the same bodily injury limits of $1,000,000, as the prior policy. Since the UM form, dated November 6, 2008, which was signed in connection with the renewal policy did not indicate a change in the UM selection, the same coverage applies to the renewal policy as a matter of law. In fact, the renewal UM form states:

> Florida law requires that automobile liability policies include Uninsured Motorist coverage at limits equal to the Bodily Injury Liability limits in your policy unless you select a lower limit offered by the company or reject Uninsured Motorist coverage entirely. *If this is a renewal policy,* the coverage rejection or limits of your expiring policy will apply for the renewal policy unless you make a different selection below.

(*See id.* at Ex. C.) Therefore, since Mr. Cooper did not make a selection which was different from the selection he made in relation to the prior policy period, no UM coverage is afforded. Further, the language of this UM form clearly indicates that Travelers did, in fact, offer UM coverage in Florida, despite Plaintiff's arguments to the contrary.

In *Wausau,* the plaintiff estate argued that, since the insurer did not have a form indicating that the insured rejected UM coverage for the policy period at issue, such coverage was afforded. However, the court found that, since the insured initially declined UM coverage for the prior policy period, it was not necessary to reject such coverage during the following policy period. The court held that "[b]y operation of Florida law, the initial rejection extended to the renewal of the policy because Wausau did not receive a written request from Roberds to change its coverage." *Wausau,* 281 F.Supp.2d at 1317. This Court similarly finds that because Mr. Cooper did not make a different selection on the November 6, 2008 form, the

prior form governs. The prior form, dated October 10, 2007, expressly establishes that Mr. Cooper rejected UM coverage for the insureds.

**ACCORDINGLY,** it is **ORDERED AND ADJUDGED:**

Defendant's Motion for Final Summary Judgment (Dkt. 22) is **granted.** Plaintiff's Cross–Motion for Summary Judgment (Dkt. 26) is **denied as moot.** The Clerk is directed to enter judgment in favor of Defendant, terminate any pending motions, and close this case.